GARWOOD, Circuit Judge:
Defendant-appellant Gregory Kuban (Ku-ban), a convicted felon, pleaded guilty to a charge of knowingly possessing firearms that had been shipped or transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Prior to entering his plea, Ku-ban filed a motion to dismiss the indictment, challenging the constitutionality of section 922(g)(1). Kuban’s plea was conditioned on his right to appeal the district court’s denial of this motion to dismiss the indictment. On appeal, Kuban challenges both the constitutionality of section 922(g)(1) and the district court’s interpretation and application of the guidelines in computing his sentence..
Facts and Proceedings Below
On the evening of July 1, 1994, Kuban went searching for his fourteen-year-old daughter, Jennifer Kuban. During his search, he came upon a friend of his daughter, sixteen-year-old Kenan Ozen (Ozen), parked in his car with Justin Neelley (Neel-ley). Kuban pulled his car alongside that of Ozen, pointed a 9mm pistol at Ozen’s head, cocked the hammer and demanded that Ozen tell him the whereabouts of his daughter. Kuban was acquainted with Ozen as Ozen had previously worked for him, providing maintenance at Kuban’s automobile detail and window tinting business. Directing his ' litany of threats and questions at Ozen, Ku-ban apparently left Neelley alone. Ozen and Neelley accordingly led Kuban to his daughter.
When they arrived at the residence where Jennifer Kuban was staying, Ozen and Neel-ley went inside and told the occupants what had happened. They locked the door and stayed in the house while Kuban sat outside in his car, honking his horn and yelling. Fearing that Kuban would eventually attempt to enter the residence, the occupants called the police, but Kuban departed before the police arrived.
After obtaining a warrant for Kuban’s arrest, law enforcement officers proceeded to Kuban’s residence and observed him get into his car as if to depart. As five officers ran to Kuban’s car, Kuban was seen leaning into the passenger area of his vehicle. One of the officers reported that he then saw a handgun on the front passenger floor. Kuban was instructed to raise his hands and exit the vehicle; when he refused to do so, Kuban was forcibly removed from his car and hand *973 cuffed. A subsequent investigation of the car resulted in the recovery of a loaded Browning 9mm pistol (manufactured in Belgium) from the front passenger seat, a loaded Ruger Redhawk .41 caliber magnum pistol (manufactured in Connecticut) from the front passenger floor area, and a small quantity of marihuana on the passenger seat.[1] Kuban was arrested for aggravated assault with a deadly weapon, possession of a firearm by a felon[2], and possession of marihuana. Kuban made bond on these state charges and was released.
In Texas state court, Kuban was charged with aggravated assault with a deadly weapon, in violation of Texas Penal Code §§ 22.01(a)(2), 22.02(a)(2), and felon in possession of a firearm, in violation of Texas Penal Code § 46.04(a)(1). On November 11, 1994, a federal indictment against Kuban was also returned, charging him with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).
Kuban filed a motion to dismiss the federal indictment, arguing that section 922(g)(1) is an unconstitutional exercise of the government’s power to regulate commerce. The district court overruled this motion, and Ku-ban subsequently entered a conditional guilty plea, reserving his right to appeal the district court’s adverse determination of his motion to dismiss.
The presentence investigation report (PSR) recommended: a four-level increase to Kuban’s base offense level for Kuban’s “use[] or possession of] any firearm or ammunition in connection with another felony offense”, pursuant to U.S.S.G. § 2K2.1(b)(5)[3]; a two-level “vulnerable victim” increase pursuant to U.S.S.G. § 3A1.1; and a three-level downward departure in recognition of Kuban’s acceptance of responsibility, pursuant to U.S.S.G. § 3El.l(a). Ku-ban objected to the PSR’s recommendations for increases in offense level, but the district court overruled his objections and adopted the recommendations. The district court sentenced Kuban to 108 months imprisonment, a three-year term of supervised release, a fine of $12,500, and a special assessment of $50. Kuban appeals.
Discussion
I. Constitutionality of 18 U.S.C. § 922(g)(1)
Kuban’s challenges to the constitutionality of section 922(g)(1) as applied to him have been resolved adversely to his contentions by our recent decision in United States v. Rawls, 85 F.3d 240 (5th Cir.1996), which is binding on this panel.[4] See also United States v. Segeada, No. 95-40430, 74 F.3d 1237 (5th Cir. Nov. 30, 1995) (unpublished) (upholding constitutionality of section 922(g)(1)). We accordingly reject this claim of error.
II. Application of the Sentencing Guidelines
We review de novo the district court’s “interpretation of the requirements” of the sentencing guidelines. United States v. Lara-Velasquez, 919 F.2d 946, 953 (5th Cir.1990). However, where the district court has correctly interpreted the relevant guideline provisions, we review the district court’s application of the guidelines to the particular facts and circumstances of the case before it for abuse of discretion. See Koon v. United *974 States, - U.S. -, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).
A. “Unusually Vulnerable Victim” Enhancement
The PSR recommended a two-level increase to Kuban’s base offense level because Kuban knew or should have known that Ozen was “unusually vulnerable due to age, physical or mental condition, or that [Ozen] was otherwise particularly susceptible to the criminal conduct.” U.S.S.G. § 3A1.1. Specifically, the PSR stated that Kuban verbally and physically threatened to kill sixteen-year-old Ozen with a cocked, loaded pistol. The PSR also noted that Ozen had worked for Kuban at Kuban’s business. Finally, the PSR observed that Kuban is a fairly .large and imposing individual.
The district court adopted the PSR’s recommendation. After considering defense counsel’s arguments on this point, the district court concluded that Ozen was unusually vulnerable because of his age — “unusually vulnerable, because he’s being faced by a fellow who is, perhaps, bigger, certainly older, more experienced, more knowledgeable, more mature, supposedly, as to what he might be able to do to him or with him.”
Kuban challenges this adjustment on two grounds: First, Kuban contends that the offense of conviction, felon in possession of a firearm, is a victimless crime; second, Kuban argues that, even assuming arguendo that there could be a victim of his offense of conviction, Ozen was not “unusually vulnerable” within the meaning of section 3A1.1.
Reviewing Kuban’s first contention de novo, we hold that the district court did not err by characterizing Ozen as a “victim” of Kuban’s conduct. In United States v. Roberson, 872 F.2d 597 (5th Cir.), cert. denied, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989), this Court held that, in the present context, “[T]he [Sentencing] Commission has chosen not to require a nexus between the offense of conviction and the victim.” Id. at 608. This Court reached this conclusion after observing that the commentary to section 3A1.1 did not require the vulnerable victim to be a victim of the offense of conviction: “[W]hen the Commission has wished to require a link between the offense of conviction and a factor the court could consider in sentencing, it has expressly included that requirement in the Guidelines.” Id. At the time that this Court decided Roberson, the commentary to section 3Al.l explained that the vulnerable victim enhancement “applie[d] to any offense where the victim’s vulnerability played any part in the defendant’s decision to commit the offense.” Id. Based on this language, this Court held in Roberson that the (deceased) individual whose credit card had been used by the defendant after the card owner’s death in order to commit the charged “credit card fraud” — the offense of conviction — was a “victim” under section 3A1.1, particularly in that the decedent “certainly suffered indignity in having his corpse abused and his good name brought into this whole sordid affair.” Id. at 609.[5] Within this analytical framework, Ozen must be viewed as a “victim” of Kuban’s conduct, as well. We are bound by Roberson,[6]
*975 Next, Kuban contends that, even if Ozen were a “victim” within the meaning of section 3A1.1, the district court erred in finding that Ozen was an “unusually vulnerable” victim. “The determination of ‘vulnerability is a complex fact dependent upon a number of characteristics which a trial court could not possibly articulate completely’ ...” United States v. Scurlock, 52 F.3d 531, 542 (5th Cir.1995) (footnote omitted). “Accordingly, we give the finding of vulnerability due deference.” United States v. Box, 50 F.3d 345, 358-59 (5th Cir.), cert. denied, — U.S. -, 116 S.Ct. 309, 133 L.Ed.2d 213 (1995). See also Koon v. United States, — U.S. -, ---, 116 S.Ct. 2035, 2045-46, 135 L.Ed.2d 392 (1996) (recognizing the statutory requirement “that courts of appeals ‘give due deference to the district court’s application of the guidelines to the facts’ ”).[7] Additionally, we accord due deference to the finding of “what the defendant knew or should have known in this respect.” United States v. Brown, 7 F.3d 1155, 1160 (5th Cir.1993). Finally, we must determine whether the district court’s finding of “unusual vul-nerab[ility]” was plausible in light of the record as a whole. See Scurlock, at 542.
In the instant case, the district court concluded that Ozen was unusually vulnerable because of his age — “unusually vulnerable, because he’s being faced by a fellow who is, perhaps, bigger, certainly older, more experienced, more knowledgeable, more mature, supposedly, as to what he might be able to do to him or with him.” Additionally, it was brought to the district court’s attention that Ozen had previously been employed by Kuban, adding yet another nuance to the relationship between these two individuals. Although the issue is indeed a close one, and the concept of vulnerability has arguably been taken virtually to its outer limits, nevertheless, in light of all the foregoing eireum-stances and the deference due the district court, we ultimately conclude that its application of section 3A1.1 must stand.
B. Enhancement for Use of Firearm to Commit Felony
Finally, the district court also applied a four-level increase to Kuban’s base offense level because “the defendant used or possessed [a] firearm or ammunition in connection with another felony offense ...” U.S.S.G. § 2K2.1(b)(5). In this case, the “[other] felony offense” was aggravated assault with a deadly weapon, violative of Texas Penal Code §§ 22.01(a)(2), § 22.02(a)(2). The parties correctly agree that the second state offense with which Kuban was charged, felon in possession of a firearm, violative of Texas Penal Code § 46.04(a)(1), cannot constitute the “[other] felony offense” underlying the district court’s [section 2K2.1(b)(5) ] four-level enhancement. However, it appears that the district court relied on the state aggravated assault with a deadly weapon charge to increase Kuban’s base offense level pursuant to section 2K2.1(b)(5)[8], and, contrary to Kuban’s protestations, the district court did not err in doing so.
At sentencing, defense counsel objected to the PSR’s recommendation of section 2K2.1(b)(5) enhancement, arguing principally that Kuban was being “doubly punished” for his possession of firearms. Counsel further contended that “the aggravated assault [ ] in the state court would not have been an aggravated assault but for the use of the firearm.” However, when the district court asked defense counsel whether someone could “be charged with aggravated assault for some other reason other than the use of a firearm?”, counsel correctly responded, “Yes, *976 Your Honor.”[9] It is clear that there is no merit to Kuban’s assertion that he was “doubly punished” for possessing firearms. This argument misses the critical requirement of section 22.02(a)(2) that the defendant must use or exhibit a deadly weapon in order for an assault to rise to the level of an aggravated assault. A defendant’s mere possession of a deadly weapon during the commission of an assault would not of itself implicate section 22.02. It is indisputable that Kuban committed his assault on Ozen by using and/or exhibiting — not merely contemporaneously possessing (as by carrying concealed in his pocket) — the deadly weapon: the section 22.02 violation was Kuban’s pointing the weapon at Ozen’s head at close range and cocking it, while demanding information from Ozen. Therefore, the district court properly increased Kuban’s base offense level pursuant to section 2K2.1(b)(5) in the present case.[10]
Conclusion
For the foregoing reasons, Kuban’s conviction and sentence are AFFIRMED.

. After impounding Kuban’s vehicle, an inventory of the car additionally revealed a bag containing seven syringes and two spoons, a coffee can containing approximately one-half ounce of marihuana, zigzag rolling papers and several small plastic bags.

. Kuban had been previously convicted of three felony offenses: aggravated assault, retaliation, and possession of marihuana in an aggravated quantity.

. The PSR states that "Mr. Kuban unlawfully possessed two handguns on July 1, 1994. He used the Browning 9mm automatic to threaten the life of 16-year-old Kenan Ozen on that date. He was subsequently charged with Aggravated Assault with a Deadly Weapon in state district court, as well as Felon in Possession of a Firearm in violation of Texas state felony statutes. Consequently, this four-level adjustment is applicable.”

.As indicating by the concurring opinion in Rawls (joined in by all judges on that panel), were the matter res nova a powerful argument could be made for a contrary result; however, this inferior federal court must regard Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) as barring the way.

. This Court also noted in Roberson that the commentary to U.S.S.G. § 1B1.3, which addresses "relevant conduct”, clarified that “conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable Guideline Sentencing range." Roberson, at 608-609.

. In so holding, we recognize that the relevant commentary to section 3A 1.1 has been amended since our decision in Roberson. The commentary now states: "This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant.” U.S.S.G. § 3A1.1, comment, (n. 1) (effective November 1, 1989). This Court has not considered the impact of this amendment on our decision in Roberson. However, there appears to be little in the language of this amendment that would justify the conclusion that Roberson is no longer binding. Furthermore, the Supreme Court opinion advanced by Kuban, Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), is clearly distinguishable. In Hughey, the Court did conclude that the class of “victims” at issue in that case would be limited to victims of the offense of conviction. Id. at 414-18, 110 S.Ct. at 1982-83. In reaching this conclusion, however, the Court was clearly addressing only the restitution provisions of the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579-3580. After considering the statutory language at issue and the ordinary meaning of the word "restitution”, the Court held that "restitution as authorized by the statute is in *975 tended to compensate victims only for losses caused by the conduct underlying the offense of conviction.” Id. at 416, 110 S.Ct. at 1982. Ku-ban’s argument in the present case draws no really significant, direct support from this holding. Hughey is simply too far removed from the present issue to justify the conclusion that this panel is no longer bound by Roberson. In sum, this panel is simply not free to reexamine Roberson.

. The statutory requirement at issue is set forward in 18 U.S.C. § 3742. Before the sentencing guidelines system was implemented, a federal criminal sentence within the statutory limits was essentially not reviewable on appeal. Id. Section 3742 was enacted in order to create limited appellate jurisdiction to review federal sentences. Id. In the above quotation, the Court was citing the 1988 amendment to section 3742. Id.

. Texas Penal Code § 22.02, entitled "Aggravated Assault”, states:
"(a) A person commits an offense if the person commits assault- as defined in Section 22.01 and the person:
... (2) uses or exhibits a deadly weapon during the commission of the assault.” (emphasis added).
In relevant part, section 22.01, entitled "Assault", states:
"(a) A person commits an offense if the person:
... (2) intentionally or knowingly threatens another with imminent bodily injury ...”

. We also note that, by its own terms, section 2K2.1(b)(5) mandates enhancement when the requisite conditions for application of that section have been met. The requisite conditions having been met in the instant case — "the defendant used or possessed [a] firearm or ammunition in connection with another felony offense"— the district court had no discretion regarding application of this enhancement.

. The transcript of Kuban's September 14, 1995, sentencing hearing clearly reflects that defense • counsel recognized that the "[other] felony offense” in question was the state charge of aggravated assault with a deadly weapon, and that the government and the district court shared this view.