**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 96-40539**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**STEVEN LAKEITH ARMSTEAD,**

**Defendant-Appellant.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**No. 96-40560**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**LEROY GRAHAM ARMSTEAD,**

**Defendant-Appellant.**

Appeals from the United States District Court
For the Eastern District of Texas

June 2, 1997

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Before the Court are two consolidated appeals brought by brothers Steven Lakeith Armstead and Leroy Graham Armstead ("the Armsteads") challenging the validity of the sentences imposed

following their guilty pleas.  The Armsteads pleaded guilty to stealing firearms from a licensed firearms dealer, a violation of 18 U.S.C. § 922(u).  At sentencing, the district court used the 1995 Guidelines and enhanced the Armsteads' base offense level by four levels pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(5) on the ground that they possessed firearms in connection with "another felony offense," the state law crime of burglary of a building.  The Armsteads argue that the enhancement was improperly applied because there was not "another felony offense" in addition to the conduct underlying the firearms-burglary offense.  Finding no error, we affirm the decision of district court to enhance the Armsteads' sentence under § 2K2.1(b)(5).  Leroy Armstead also argues that the district court improperly enhanced his base offense level by two levels for possessing stolen firearms under U.S.S.G. § 2K2.1(b)(4).  The application of the two level enhancement under the 1995 Edition of § 2K2.1(b)(4) violates the ex post facto clause of the Constitution and, as such, we vacate Leroy Armstead's sentence and remand for resentencing.

## BACKGROUND

On August 22, 1995, at approximately 3:45 a.m., the Jasper Police Department received a call indicating that an alarm had been sounded at the Phillips Pawn Shop, a licensed firearms dealer.  When officers arrived, they realized that the pawn shop had been broken into and that a number of firearms had been stolen.  The

2

manager reported that, in fact, 19 guns had been stolen, two of which were recovered outside the building.

Later that day, the police received a call from a confidential informant ("CI") who told the officers that the suspects were in Houston selling the stolen guns. The CI identified the suspects as "Bellini" (Terry Bellini Barlow), "Speed Buggy" (Michael D. White), "Worm" (Steven Smith, a/k/a Steven Armstead), and "Worm's brother" (Leroy Armstead). The officers then set up surveillance at several locations frequented by the suspects.

Upon apprehending the perpetrators, the officers learned that 13 of the guns had been sold in Houston. They recovered the remaining four firearms from the automobile used during the defendants' Houston trip. All of the defendants admitted their roles in this crime except Barlow. No other firearms were found in addition to those stolen from the pawn shop.

In December 1995, a federal grand jury returned a four-count indictment against the four defendants. The Armsteads were both named in Counts I and II of the indictment. Count I charged the Armsteads with conspiracy to steal firearms from a licensed firearms dealer, in violation of 18 U.S.C. § 371. Count II charged them with stealing the firearms from a licensed dealer in violation of 18 U.S.C. § 922(u). Leroy Armstead was charged with an additional count, Count IV, felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1).

In March 1996, the Armsteads entered a plea agreement with the United States Attorney's Office and pleaded guilty to Count II. In

3

return, the government dismissed the conspiracy charge under Count I.  The government also dismissed Count IV, the felon in possession charge, against Leroy Armstead.

The probation officer's presentence report (PSR), applying the 1995 Edition of the Guidelines Manual, fixed Steven Armstead's base offense level at 12, pursuant to U.S.S.G. § 2K2.1(a)(7).  The probation officer, using U.S.S.G. § 2K2.1(b)(1)(D), then added four points because more than 12 firearms were involved in the offense.  Four more points were added pursuant to U.S.S.G. § 2K2.1(b)(5).  The probation officer interpreted § 2K2.1(b)(5) to require that additional points should be added to Steven Armstead's base offense level because he used or possessed the stolen firearms in connection with another felony offense, the state law crime of burglary of a building.  Steven Armstead then received a three point reduction for acceptance of responsibility which resulted in a total base offense level calculation of 17.  With a base offense level of 17 and a criminal history category of IV, Steven Armstead's guideline sentencing range was 37 to 46 months.

The probation officer relied on similar reasoning in calculating Leroy Armstead's base offense level.  However, Leroy Armstead received a substantially greater sentence due to his extensive criminal history.  The probation officer first arrived at a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).  Four points were added because the total number of firearms involved exceeded 12 and an additional four points were applied under U.S.S.G. § 2K2.1(b)(5) because Leroy Armstead used or

4

possessed these firearms in connection with another felony offense. Two additional points were added to Leroy Armstead's base offense level under U.S.S.G. § 2K2.1(b)(4) due to the fact that the firearms at issue were stolen. After applying the three level reduction for acceptance of responsibility, Leroy Armstead's base offense level was 27. With a criminal history category of VI, Leroy Armstead's guideline sentencing range was 130-162 months. Because the statutory maximum sentence of 120 months was less than the applicable guideline range, Leroy Armstead's sentence was limited to 120 months.

The Armsteads filed timely objections to the PSR's four-level enhancement under U.S.S.G. § 2K2.1(b)(5). Leroy Armstead also objected to the two level enhancement from U.S.S.G. § 2K2.1(b)(4). The district court overruled both objections and adopted the PSR. The district court then sentenced Steven Armstead to 46 months imprisonment and three years supervised release. Leroy Armstead was sentenced to 120 months imprisonment and three years supervised release. The Armsteads filed timely appeals from the sentences imposed by the district court.

## ANALYSIS

A district court's sentencing decision will be upheld unless it was imposed in violation of the law, is a result of an incorrect application of the guidelines, or the district court unreasonably departed from the applicable guideline range. *United States v. Guadardo*, 40 F.3d 102, 103 (5th Cir. 1994). The district court's

fact findings at sentencing are reviewed for clear error, and any interpretation of the Guidelines is subject to *de novo* review. *United States v. Kuban*, 94 F.3d 971, 973 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 716 (1997).

*1. Ex Post Facto Concerns*

We begin our analysis with the question of whether the correct edition of the Guidelines Manual was used in calculating the Armsteads' sentences. The district court used the 1995 Edition of the Guidelines Manual. Pursuant to U.S.S.G. §§ 1B1.11(a) and 1B1.11(b)(1), a district court should apply the edition of the Guidelines Manual in effect on the date the defendant is sentenced, unless the application of such Guideline Manual would violate the ex post facto clause of the Constitution, in which event, the Guidelines in effect on the date of the offense should be used.

In this case, sentencing occurred after the effective date of the 1995 Edition. However, in August 1995, when the Armsteads violated 18 U.S.C. § 922(u), the 1994 Edition of the Guidelines Manual was in effect. The 1994 Edition did not contain any reference to § 922(u) nor did it specify which Guideline should be used to calculate a base offense level for such violations. This circumstance developed because the effective date of Public Law 103-159, which inserted the new subsection "(u)" in 18 U.S.C. § 922, was November 30, 1993. Obviously, the Sentencing Commission did not have adequate time to prepare and file amendments to the 1994 Edition of the Guidelines referencing this new statute.

6

After ordering supplemental briefing from the parties on this issue and reviewing the applicability of both the 1994 Edition and the 1995 Edition of the Guidelines Manual to this case, we are convinced that no ex post facto violation occurred as to the application of § 2K2.1, except as later specified. In reaching this conclusion, we were required to make two judgment calls. First, given that the 1994 Guidelines do not refer to § 922(u), we had to determine what would be the proper guideline to use for this offense under the 1994 Guidelines. Second, once we determined the appropriate guideline to apply, we asked whether the application of the 1995 Guidelines increases the defendants' sentences when compared with the application of the same guideline under the 1994 Edition. We address each decision now in more detail.

First, to ascertain the applicable guideline using the 1994 Edition, we found that no provision exists in that edition for violations of 18 U.S.C. § 922(u). Appendix A of the 1994 Guidelines Manual directs us to U.S.S.G. § 2X5.1 to calculate the guideline range for offenses not listed in the index, in this case, § 922(u) offenses. *See* U.S.S.G. § 2K2.1 App. A. Section 2X5.1 states:

> If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter 2 offense guideline shall remain applicable.

U.S.S.G. § 2X5.1.

7

In our view, the most analogous guideline in the 1994 Edition for the Armsteads' offenses is U.S.S.G. § 2K2.1. This guideline deals with firearms offenses and enhancements for possession or use of stolen firearms. This guideline is the applicable guideline for all of the other subsections of § 922 which define criminal conduct, with the exception of violations of 18 U.S.C. § 922(q), for which U.S.S.G. § 2K2.5 applies. In passing Public Law 103-159, Congress expressly decided that the prohibited conduct in subsection "(u)" would be a part of § 922. The maximum penalty fixed by Congress for violations of § 922(u), ten (10) years, reflects the same punishment as set out by Congress for other violations of § 922. This new subsection "(u)" was intended to protect the holders of federal licenses who import, manufacture or deal in firearms from theft of their inventories. In fact, many of these licenses are issued in accordance with other subsections of § 922.

Furthermore, in May 1995, the Sentencing Commission filed proposed Amendment 522 with Congress. In this amendment, the Commission itself determined that the proper guideline for handling § 922(u) violations would be U.S.S.G. § 2K2.1. When dealing with a new statutory crime, we believe the courts should defer to the authority of the Sentencing Commission to define, by amending the guidelines, which particular guideline will be applicable to the new crime. *See United States v. White*, 869 F.2d 822, 826-26 (5th Cir. 1989)(recognizing that Congress has the power to completely divest the courts of their sentencing discretion and that Congress

8

granted broad authority to the Sentencing Commission guided by specific goals and principles).  Where, as in this case, evidence of the Commission's policies and goals are publicly available to the courts, we should utilize these proposed new amendments in making determinations as to "analogous guidelines" for sentencing purposes under § 2X5.1.  *See Stinson v. United States*, 113 S. Ct. 1913, 1915 (1993)(Commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.").  For these reasons, we hold that "the most analogous offense guideline" to be applied for violations of § 922(u) under the 1994 Edition is section 2K2.1.[1]

We now turn to compare the provisions of the 1994 Guidelines with the 1995 Guidelines to determine if § 2K2.1, in the 1995 Guidelines, would produce a higher sentence than § 2K2.1 in the 1994 Guidelines and thus implicate the ex post facto clause.  Both editions contain identical provisions for determining a defendant's base offense level.

---

[1]  The Armsteads also rely on an analogous case from the Sixth Circuit, *United States v. Halliburton*, 73 F.3d 110 (6th Cir. 1996). The *Halliburton* defendants were convicted under 18 U.S.C. § 922(u) for theft of firearms from a licensed firearms dealer and the district court sentenced them under U.S.S.G. § 2K2.1.  The Sixth Circuit reversed holding that U.S.S.G. § 2B1.1 most resembled the charged conduct, in that case, theft.  In so holding, the court ignored the subsequent "clarifying" amendment in the 1995 Edition of the Guidelines for § 2K2.1, which directed courts to use § 2K2.1 for violations of 18 U.S.C. § 922(u).  This amendment was pending in Congress and publicly available at the time of the Sixth Circuit's decision.  According to U.S.S.G. § 1B1.11(b)(2), we are to consider subsequent clarifying amendments to the Guidelines.  As such, we decline to adopt the Sixth Circuit's reasoning in *Haliburton*.

Finding no changes to the main structure of § 2K2.1 itself, we then look to the offense characteristics section, U.S.S.G. § 2K2.1(b).  Section 2K2.1(b)(5) states:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

U.S.S.G. § 2K2.1(b)(5).  For the reasons discussed later in part 2, the Armsteads' conduct appears to satisfy the requirements for this section.  Consequently, if the 1994 Guidelines had been applied, the Armsteads would have received a four-level increase in their base offense levels pursuant to U.S.S.G. § 2K2.1(b)(5).

The 1995 Edition of the Guidelines expressly states that U.S.S.G. § 2K2.1 should be used for offenses involving 18 U.S.C. § 922(u).  *See* U.S.S.G. App. A.  Section 2K2.1(b)(5), which was not amended from 1994 to 1995, directs us to increase the Armsteads base offense level by four points for using a firearm in connection with another felony offense.  As such, the four-level increase under § 2K2.1(b)(5) is applicable to this case under either the 1994 or 1995 Editions of the Guidelines Manual.  Consequently, we hold that no ex post facto concerns are raised by the application of § 2K2.1(b)(5) of the 1995 Edition of the Guidelines Manual.

However, Leroy Armstead also appealed from the district court's imposition of a two level enhancement assessed under the 1995 Edition of § 2K2.1(b)(4) because the firearms at issue were stolen.  In considering the ex post facto concerns raised by this

10

enhancement, for situations where "any firearm was stolen," we first consider enhancement under the 1994 Edition of the Guidelines. Subsection (b)(4) increases a base offense 2 levels if any firearm involved in the offense was stolen or had an altered or obliterated serial number.

The 1994 Edition of the Guidelines, commentary note 12 states:

> If the defendant is convicted under 18 U.S.C. § 922(I), (j), or (k), or 26 U.S.C. § 5861(g) or (h) (offenses involving stolen firearms or ammunition), and is convicted of no other offense subject to this guideline, do not apply the adjustment in subsection (b)(4) because the base offense level itself takes such conduct into account.

U.S.S.G. § 2K2.1, comment. (n.12) (1994) (emphasis added). As stated earlier, this note does not refer to § 922(u) because that subsection only became effective on November 30, 1993, and § 922(u) is not mentioned anywhere in the 1994 Guidelines. Because we have already determined that § 2K2.1 is "the most analogous guideline" within the meaning of U.S.S.G. § 2X5.1, we should likewise read note 12 of the 1994 Edition as if it included new subsection "(u)" in its reference to convictions under § 922. The listed § 922 offenses under note 12 all apply to offenses involving stolen firearms or ammunition. The § 922(u) offense is one involving stolen firearms. The second element of the note 12 commentary requires a determination as to whether Leroy Armstead was "convicted of no other offense subject to this guideline." He clearly was not convicted of any offense other than § 922(u) and, therefore, subsection (b)(4)'s enhancement would not have been applied to Leroy Armstead under the 1994 Edition of the Guidelines.

11

In the 1995 Edition of the Guidelines, the text of subsection (b)(4) remained the same but commentary note 12 was amended. Note 12 now provides:

> If the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(I), (j), or (u), 18 U.S.C. § 924(j) or (k), or 26 U.S.C. § 5861(g) or (h)(offenses involving a stolen firearm or stolen ammunition) <u>and the base offense level is determined under subsection (a)(7)</u>, do not apply the adjustment in subsection (b)(4) unless the offense involved a firearm with an altered or obliterated serial number. This is because the base offense level takes into account that the firearm or ammunition was stolen.
>
> Similarly, if the only offense to which § 2K2.1 applies is 18 U.S.C. § 922(k)(offenses involving an altered or obliterated serial number) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a stolen firearm or stolen ammunition. This is because the base offense level takes into account that the firearm had an altered or obliterated serial number.

U.S.S.G. § 2K2.1, comment. (n.12) (1995) (emphasis added). This amended commentary clearly permits the sentencing court to enhance an offense by two levels under subsection (b)(4) if the base offense is not calculated under U.S.S.G. § 2K2.1(a)(7). Leroy Armstead's base offense was calculated under § 2K2.1(a)(4)(A) and, therefore, his offense may be enhanced under this subsection.

While the Commission refers to this amendment as a "clarifying" amendment, it is clear that the new commentary note 12 provides for a substantive change in the sentencing treatment of defendants that have violated statutes governed by § 2K2.1. "To be ex post facto, a law first `must be retrospective, that is it must apply to events occurring before its enactment'; and second `must

12

disadvantage the offender' it affects." *United States v. Suarez*, 911 F.2d 1016, 1021-22 (5th Cir. 1990)(quoting *Miller v. Florida*, 482 U.S. 423, 430 (1970)). "A sentence that is increased pursuant to an amendment to the guidelines effective after the offense was committed violates the ex post facto clause." *United States v. Domino*, 62 F.3d 716, 720 (5th Cir. 1995).

In this case, subsection (b)(4) of the 1995 Edition of the Guidelines was applied to enhance Leroy Armstead's sentence. Therefore, his guideline sentence for the instant offense is higher than it would have been under the guidelines applicable when the offense was committed, the 1994 Edition. The ex post facto clause operates to bar such a retrospective increase in Leroy Armstead's sentence. *See* U.S. CONST. art. 1, § 9, cl. 3. For these reasons, we hold that Leroy Armstead should not have received a two level increase in his base offense level under § 2K2.1(b)(4) and Leroy Armstead's sentence should have been calculated using the 1994 Edition of the Guidelines Manual.[2]

2. *"Another Felony Offense" - U.S.S.G. § 2K2.1(b)(5)*

The Armsteads pleaded guilty to Count II of the indictment, which charged them with violating 18 U.S.C. § 922(u).[3] The

---

[2] Because the remaining substantive sections of § 2K2.1 have not been changed from the 1994 Edition to the 1995 Edition, it is irrelevant which edition is used for purposes of our remaining analysis.

[3] 18 U.S.C. § 922(u) states:

> [I]t shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing,

Armsteads contend that the district court erred in assessing a four point enhancement under U.S.S.G. § 2K2.1(b)(5) because such an enhancement constitutes a double jeopardy violation. The Armsteads maintain that the § 2K2.1(b)(5) enhancement punishes them twice for the same underlying conduct, stealing the firearms from the pawn shop.

Furthermore, the Armsteads contend that the four-level enhancement was improperly applied because they were not involved in "another felony offense" other than the conduct underlying the theft-of-firearms offense. They argue that none of the stolen firearms were used or possessed during the commission of the burglary itself and, as such, it cannot be said that the stolen firearms were "used or possessed in connection with another felony offense" under U.S.S.G. § 2K2.1(b)(5).

In response to the Armsteads' objection to the § 2K2.1(b)(5) enhancement, the probation officer relied on U.S.S.G. § 1B1.3(a)(1)(B), which provides that the application of the cross references in Chapter Two shall be determined based upon the following:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in

> manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

14

> preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B). The probation officer determined that § 2K2.1(b)(5) was properly applied and should not be considered double counting because subsection (b)(5) takes into consideration the increased danger when firearms are used or possessed in connection with another felony offense. This conduct should be considered relevant conduct in light of § 1B1.3(a)(1)(B). The probation officer also contends that the "[other] felony offense" is the state law crime of burglary of a building, which is different from the violation of 18 U.S.C. § 922(u). The Armsteads did possess the stolen firearms in connection with the state law felony of burglary.

The district court adopted the PSR and specifically stated:

> I find that there's no double counting for the four-level increase, because subsection (b)(5) takes into consideration the danger when firearms are possessed or used in connection with another felony offense, and that (b)(5) does not additionally punish him for the firearms being stolen.

> I find further that 922, subsection "u", of 18 U.S. Code is different from the general theft statute, and possessing the stolen firearms under 922(u) is not double counting when addressing behavior under U.S. Code section 2111.

> Although he wasn't charged with burglary in the federal indictment, he was and is charged by the State of Texas. In that regard, he and his co-defendants jointly agreed and did possess, although they didn't use them, stolen firearms in connection with the burglary, and that ... objection ... is overruled.

To determine the propriety of the application of U.S.S.G. §

15

2K2.1(b)(5), we must ascertain whether the Armsteads used or possessed the stolen firearms "in connection with another felony offense." In this case, the district court found that the Armsteads engaged in the state law crime of burglary and the federal crime of theft of a firearm from a licensed firearms dealer, and that the district court applied § 2K2.1(b)(5) accordingly.

We have wrestled with the construction of § 2K2.1(b)(5) on at least two other occasions. *See* ***United States v. Fadipe***, 43 F.3d 993 (5th Cir. 1995); ***United States v. Condren***, 18 F.3d 1190 (5th Cir. 1994). In ***Fadipe***, we vacated a sentence enhancement under § 2K2.1(b)(5) because the gun in question was not used "in connection with" the bank fraud committed by the defendant. ***Fadipe***, 43 F.3d at 995. We held that "[t]he mere possession of a gun near the instruments involved in a fraudulent loan application scheme is insufficient to prove that the gun was used `in connection with' the bank fraud felony for purposes of the application of U.S.S.G. § 2K2.1(b)(5)." ***Id.***

In ***Condren***, however, we affirmed the district court's application of § 2K2.1(b)(5) based on the increased danger inherent with the possession of firearms during the commission of another felony offense. ***See Condren***, 18 F.3d at 1197-98; ***United States v. Guerrero***, 5 F.3d 868, 873 (5th Cir. 1993). ***Condren*** is distinguishable from ***Fadipe*** in that proof existed that Condren could have used or possessed the firearms at issue in connection with the other crime, drug distribution. Condren pleaded guilty to

16

being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and his sentence was enhanced under § 2K2.1(b)(5) because the PSR indicated that Condren possessed a loaded .22 caliber revolver in connection with the distribution of cocaine. *Condren*, 18 F.3d at 1191-92. The district court made findings that Condren possessed the firearm while in possession of small quantities of crack cocaine and marijuana seed. The district court also found that Condren possessed the firearm at the same time that he possessed the controlled substances. This Court held that the district court properly enhanced Condren's sentence based on his possession of a firearm in connection with the felony crime of drug distribution. *Id.* at 1198.

For sentencing purposes, the "in connection with" prong must only be proved by a preponderance of the evidence. *See **United States v. Angulo***, 927 F.2d 202, 205 (5th Cir. 1991). Further, for purposes of enhancing a sentence under § 2K2.1(b)(5), a close relationship between the firearm and the other felony offense need not be shown. *Condren*, 18 F.3d at 1198. As a result, we held that "[u]nder the ordinary and natural meaning of `in connection with' as found in § 2K2.1(b)(5), ... we cannot credit either Condren's contention that the quantity of drugs involved was too small, or the possible contention that the source of the firearm was too unrelated, to support the enhancement." *Id.*

In the present case, the Armsteads pleaded guilty to stealing firearms from a licensed firearms dealer in violation of 18 U.S.C. § 922(u). The State of Texas has also charged the Armsteads with

17

the crime of burglary of a building, a felony. While no evidence exists to show that the Armsteads possessed or used firearms before they broke into the pawn shop, they most certainly possessed firearms once they entered the pawn shop and picked up the guns. This subsequent possession of firearms satisfies the nexus requirement for possession as stated by this Court, because those firearms were possessed and could have been used to facilitate the crimes at issue. *See **Condren***, 18 F.3d at 1194-1198.

The Armsteads' "possession" of the firearms appears to invoke the enhancement under 2K2.1(b)(5). To insure that the firearms were possessed "in connection with another felony offense," we press on. The phrase "in connection with," as used in § 2K2.1(b)(5), is not defined by the Guidelines. For guidance, we turn to the Guidelines' relevant conduct provision, U.S.S.G. § 1B1.3(a)(1)(B). This provision directs us to determine Chapter 2 adjustments based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Part K of Chapter 2 expressly refers to offenses "involving public safety." Section 2K2.1(b)(5) was added in 1991 out of concern about crimes of violence, drug offenses, and the use or possession of firearms in connection with these offenses. Such an enhancement for use or possession of a firearm "in connection with another felony offense" illustrates this increased concern for

18

public safety.  Further, given its ordinary and natural meaning, we hold that the Armsteads' possession of firearms was "in connection with" their state law burglary crime.

Having satisfied ourselves that the firearms were possessed "in connection with" the offense, we are left with the interpretive dilemma of deciding whether the state crime of burglary constituted "another felony offense."  The Guidelines define "felony offense" to mean "any offense (federal, state or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."  U.S.S.G. § 2K2.1, comment. (n.7).  The dilemma arises when we ascertain whether the burglary constituted "another" offense even though it arose contemporaneously with the primary offense, theft of firearms from a licensed firearms dealer.

We could unearth no other circuit court decision which has directly addressed this issue.  Other circuit courts have applied § 2K2.1(b)(5) to other felony offenses; however, those offenses were clearly distinct from the underlying firearms offense.  *See* *United States v. Wyatt*, 102 F.3d 241 (7th Cir. 1996) (enhancement for possession of firearm in connection with marijuana distribution), *cert. denied*, 117 S. Ct. 1325 (1997); *United States v. Sturtevant*, 62 F.3d 33 (1st Cir. 1995) (enhancement for possession of firearm in connection with state crime of assault and battery); *United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996) (defendant convicted of being a felon in possession of firearm received enhancement pursuant for possession of a firearm in

19

connection with attempted burglary of check cashing business); *United States v. Whitfield*, 50 F.3d 947 (11th Cir.) (defendant who was convicted of storing a stolen firearm received enhancement for possession of a firearm in connection with state law burglary), *cert. denied*, 116 S. Ct. 234 (1995); *United States v. Routon*, 25 F.3d 815 (9th Cir. 1994) (enhancement for possession of a firearm in connection with unlawful possession of stolen car). No case has directly addressed the application of the § 2K2.1(b)(5) enhancement to violations of 18 U.S.C. § 922(u).

The government relies primarily on *United States v. Guerrero*, 5 F.3d 868 (5th Cir. 1993), in support of the district court's application of the four-level enhancement under § 2K2.1(b)(5). *Guerrero* involved a dispute over the calculation of a base offense level under a different guideline provision, U.S.S.G. § 4B1.4(b)(3)(A). In that case, the defendant burglarized two residences and stole a number of firearms. The defendant had prior felony convictions and pleaded guilty to 18 U.S.C. §§ 922(g)(1), 924(a), possession of a firearm by a felon, and 18 U.S.C. §§ 922(j), 924(a)(2), possession of a stolen firearm. This Court affirmed the district court's imposition of a base offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A). *Id.* at 874. We explained that the Supreme Court's reasoning in *Smith v. United States,* 113 S. Ct. 2050, 2055 (1993), suggests that the meaning of § 4B1.4(b)(3)(A)'s "in connection with" language "does not necessarily exclude

20

possessing the firearms as fruits of the crime the possessor is contemporaneously committing."[4]  *Id.* at 872.

In **United States v. Kuban**, 94 F.3d 971, 975-76 (5th Cir. 1996), the defendant pleaded guilty to knowingly possessing firearms that had been shipped in interstate commerce in violation of 18 U.S.C. § 922(g)(1).  The district court enhanced his sentence under § 2K2.1(b)(5) based on the defendant's related state law crime of aggravated assault with a deadly weapon.  The defendant argued that the enhancement "doubly punished" him for his possession of a firearm, which was contemporaneous with the aggravated assault.  This Court affirmed the district court's enhancement, noting that "by its own terms, section 2K2.1(b)(5) mandates enhancement when the requisite conditions for application of that section been met."  *Id.* at 976 & n.10.

The facts of the present case are somewhat analogous to *Guerrero* and *Kuban* and we reach a similar result.  The Armsteads burglarized a pawn shop and stole a number of firearms.  In connection with the state law crime of burglary, § 2K2.1(b)(5) permits the district court to enhance a sentence on the grounds that the firearms were possessed contemporaneously with the crime.

While no evidence suggests that the Armsteads possessed

---

[4]  In **Guerrero**, we expressed some concern that §§ 2K2.1(b)(4) and 2K2.1(b)(5) could enhance a defendant's sentence twice for essentially the same conduct; however, we left the discussion of that matter for another day.  *See* **Guerrero**, 5 F.3d at 873 n.10.  In this case, only Leroy Armstead's offense level was enhanced under both § 2K2.1(b)(4) and § 2K2.1(b)(5), and we have set aside the § 2K2.1(b)(4) enhancement as not permissible under the applicable 1994 guidelines.  Consequently, the concern expressed in **Guerrero** is not present here.

21

firearms before they entered the pawn shop, once inside, they possessed firearms and could have used them in furtherance of "another felony," the state law crime of burglary.  As a result, the four-level enhancement appropriately reflects the concern for public safety which the Guidelines sought to achieve.  Amendment 374 of the Guidelines also supports this holding by noting that "[t]he firearms statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law."  U.S.S.G. App. C, Amend. 374.  In this case, the enhancement sanctions the state law crime of burglary as "another felony offense."  Nothing in the Guidelines suggests that contemporaneous crimes cannot be considered when enhancing a sentence.  In fact, the relevant conduct provisions of § 1B1.3 appear to readily permit such an enhancement.  Therefore, in order to appropriately sanction the state crime of burglary in connection with the Armsteads' 18 U.S.C. § 922(u) offense, the § 2K2.1(b)(5) enhancement was proper.[5]  *See* **United States v. Hawkins**, 69 F.3d 11, 14 (5th Cir. 1995) (double counting is permitted under the Guidelines unless expressly forbidden).

For the foregoing reasons, we hold that the district court properly enhanced the Armsteads' sentences under § 2K2.1(b)(5)

---

[5]  Steven Armstead also argues that the four-level enhancement under § 2K2.1(b)(5) is unconstitutional under **Bailey v. United States**, 116 S. Ct. 501 (1995).  This argument lacks merit because **Bailey** dealt with the issue of what actions constituted "use" of a firearm under 18 U.S.C. § 924(c).  Section 2K2.1(b)(5) expressly provides for an enhancement based on the defendant's "use or possession" of that firearm.  Steven Armstead does not dispute that he possessed firearms.

22

because they possessed firearms "in connection with another felony offense."

## CONCLUSION

The two level sentence enhancement under § 2K2.1(b)(4) violates the ex post facto clause and may not be applied to increase Leroy Armstead's sentence in this case. For the reasons stated above, we vacate Leroy Armstead's sentence and remand for resentencing in accordance with this opinion. Although we recognize that this is a close case with respect to the application of the § 2K2.1(b)(5) enhancements to Steven and Leroy Armstead's sentences, the Guidelines do not direct us to forbid such enhancements. In the absence of a directive from the Sentencing Commission, we hold that the district court properly enhanced the Armsteads' sentences under §§ 2K2.1(b)(5). The application of the four level enhancement for both Steven and Leroy Armstead is, therefore, affirmed.

LEROY ARMSTEAD'S SENTENCE IS **VACATED** AND **REMANDED** FOR RESENTENCING. IN ALL OTHER RESPECTS, THE DECISION OF THE TRIAL COURT IS **AFFIRMED.**