PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

v.                                              No. 02-4668

NORMAN LEE BLOUNT,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CR-01-17)

Argued: April 4, 2003

Decided: July 24, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Traxler and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** James Ashford Metcalfe, Assistant United States Attorney, Norfolk, Virginia, for Appellant. Frances Hemsley Pratt, Research and Writing Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Norfolk, Virginia, for Appellant. Frank W. Dunham, Jr., Federal Public Defender, Larry M. Dash, Assistant Federal Public Defender, Norfolk, Virginia, for Appellee.

**OPINION**

WILKINS, Chief Judge:

Appellee Norman Lee Blount was convicted of possession of a firearm and ammunition by a felon, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000). The Government contends that the district court erred at sentencing by refusing to impose a four-level enhancement for "possess[ing] [a] firearm or ammunition in connection with another felony offense," *U.S. Sentencing Guidelines Manual* § 2K2.1(b)(5) (2001).[1] We affirm.

I.

The conviction and sentence at issue here arose from a burglary committed by Blount in Chesapeake, Virginia. As recounted in the presentence report (PSR), Blount was stopped by police while walking near the crime scene. The police ultimately arrested him and searched his bag, which contained, *inter alia*, a box of ammunition. Blount subsequently confessed to committing a burglary and to stealing the ammunition during the commission of that offense. He also admitted that he stole a revolver during the burglary and later discarded it; with Blount's guidance, the police found the revolver in a ditch approximately one-half mile from the site of the burglary.

After being indicted for multiple offenses arising from this incident, Blount pled guilty to violating § 922(g)(1). The PSR prepared after this plea stated that the applicable offense level was 27, based in part on a four-level enhancement pursuant to § 2K2.1(b)(5). This offense level, together with Blount's criminal history category of VI, yielded a guideline range of 130 to 162 months. Before sentencing, however, Blount objected to the guidelines computations, asserting that the § 2K2.1(b)(5) enhancement was improper because the only other offense associated with his possession of the firearm was the burglary during which the firearm was obtained. The district court

---

[1] There is some ambiguity in the record about whether the probation officer and the district court used the 2000 guidelines manual or the 2001 manual. We need not resolve this, however, as the provisions relevant to this appeal are identical.

agreed with Blount and therefore concluded that his offense level should be 23 rather than 27. This conclusion yielded a sentencing range of 92 to 115 months. The court sentenced Blount to 108 months imprisonment.

II.

Section 2K2.1(b)(5) provides for a four-level enhancement if "the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The purpose of this enhancement is to ensure that a defendant receives more severe punishment if, in addition to committing a firearms offense within the scope of § 2K2.1, he commits a separate felony offense that is rendered more dangerous by the presence of a firearm (or facilitates another person's commission of an offense involving a firearm). *See United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999) (stating that § 2K2.1(b)(5) "was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of another felony" (emphasis omitted)); *United States v. Armstead*, 114 F.3d 504, 513 (5th Cir. 1997) (stating that § 2K2.1(b)(5) "reflects the concern for public safety which the Guidelines sought to achieve").

The question before us is whether the language of § 2K2.1(b)(5)—viewed in light of its commentary and its underlying purpose—requires an enhancement when, as here, a defendant acquires a firearm during a theft or burglary but does not use the firearm or evince any willingness to do so. To answer this question, we must consider whether the burglary committed by Blount constituted "another felony offense" and, if so, whether the firearm and ammunition underlying his conviction were possessed "in connection with" the burglary. We hold that the burglary does qualify as "another felony offense" but that a § 2K2.1(b)(5) enhancement is nonetheless improper here because the record does not demonstrate a sufficient nexus between the burglary and Blount's possession of a firearm.

A.   *"Another Felony Offense"*

1.

The Government argues that the burglary committed by Blount constituted "another felony offense" for purposes of § 2K2.1(b)(5) because the burglary and Blount's § 922(g) offense would be regarded as separate crimes under *Blockburger v. United States*, 284 U.S. 299 (1932). Blount counters that "another felony offense" must be "an offense distinct from the conduct by which he acquired the firearms." Br. of Appellee at 22. We agree with the position advanced by the Government.

*Blockburger* provides that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 F.3d at 304. This test has been applied to ascertain legislative intent, *see id.*, and to determine whether two offenses were the same for purposes of the Fifth Amendment prohibition against double jeopardy or the Sixth Amendment right to counsel, *see Texas v. Cobb*, 532 U.S. 162, 173 (2001).

The commentary to § 2K2.1 supports the application of *Blockburger* here. In particular, Application Note 7 defines "felony offense" to mean "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." This definition necessarily focuses on the elements of the "felony offense," as there is no way to determine whether conduct is "punishable by imprisonment for a term exceeding one year" except by ascertaining that such conduct satisfies the elements of a particular crime. Thus, the "felony offense" that forms the basis for a § 2K2.1(b)(5) enhancement ("the enhancement offense")—in this case, burglary—must consist of a crime comprising defined elements.

In determining whether a proffered enhancement offense constitutes "*another* felony offense" relative to the offense of conviction, a sentencing court could conceivably compare the *elements* of the enhancement offense with the *conduct* surrounding the offense of

conviction. The word "another," however, signifies that such asymmetry is inappropriate. *See Webster's Third New Int'l Dictionary* 89 (1981) (defining "another" to mean "an additional one of the same kind : one more"); *cf. United States v. Cutler*, 36 F.3d 406, 408 (4th Cir. 1994) (defining "another," as used in this context, to mean "'additional, one more'" (quoting *The American Heritage Dictionary, Second College Edition* (1982))). Thus, if a sentencing court must look to the elements of the enhancement offense, as Note 7 requires, it should also consider the elements of the offense of conviction.[2]

We recognize that this focus on the elements does not compel us to apply *Blockburger*. But the *Blockburger* test was formulated for resolving the very issue before us—namely, whether conduct by the defendant should be regarded as constituting a single offense or multiple distinct offenses. Moreover, because the *Blockburger* test requires only minimal separation between the enhancement offense and the offense of conviction, it does not unduly curtail application of § 2K2.1(b)(5). We therefore believe that *Blockburger* provides the appropriate standard for determining whether a proffered enhancement offense qualifies as "another felony offense."

2.

Five other courts of appeals have considered the validity of § 2K2.1(b)(5) enhancements in cases similar to this one. Two of these courts approved the imposition of such enhancements without articulating a general test for determining when a proffered enhancement offense qualifies as "another felony offense." *See United States v. English*, 329 F.3d 615, 617-18 (8th Cir. 2003);[3] *Armstead*, 114 F.3d

---

[2]We do not suggest that this definition of "offense" is appropriate for all applications of the guidelines, or even for all applications of § 2K2.1. On the contrary, the guidelines generally use the word "offense" to mean "the offense of conviction and all relevant conduct . . . unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, comment. (n.1(k)). As explained in the text, we believe another meaning is "otherwise clear" here.

[3]In *English*, the Eighth Circuit appears to have applied the *Blockburger* test without explicitly adopting it. *See id.* at 618. In an earlier case, the Eighth Circuit upheld a § 2K2.1(b)(5) enhancement on the basis that the enhancement offense was "a different kind of crime" from the offense of conviction. *United States v. Kenney*, 283 F.3d 934, 938 n.3 (8th Cir.), *cert. denied*, 123 S. Ct. 270 (2002).

at 512-13. Three other courts overturned the defendants' § 2K2.1(b)(5) enhancements on the ground that there was insufficient separation between the enhancement offense and the offense of conviction. *See United States v. Fenton*, 309 F.3d 825, 827-28 (3d Cir. 2002); *United States v. Szakacs*, 212 F.3d 344, 351-52 (7th Cir. 2000); *United States v. Sanders*, 162 F.3d 396, 400-02 (6th Cir. 1998).

The Third, Sixth, and Seventh Circuits rejected the *Blockburger* test, *see Szakacs*, 212 F.3d at 351-52, adopting instead a rule requiring "a separation of time between the offense of conviction and the [enhancement] offense, or a distinction of conduct between that occurring in the offense of conviction and the [enhancement] offense," *Sanders*, 162 F.3d at 400; *accord Szakacs*, 212 F.3d at 351. We have already explained why we believe *Blockburger* provides the proper standard. We believe it is also appropriate to explain why we would not follow the course charted by the Third, Sixth, and Seventh Circuits.

The primary justification cited by these other courts is that some separation is necessary in order to give effect to the word "another" in the phrase "another felony offense." *See, e.g.*, *Sanders*, 162 F.3d at 400. But this treatment of the word "another" presupposes that the offense of conviction includes all "relevant offense conduct." *Id.* For the reasons stated above, however, we consider it appropriate to focus on the offense elements, not the relevant conduct. This approach makes it possible to apply § 2K2.1(b)(5) only to distinct offenses— and thus to give effect to the word "another"—without requiring entirely separate conduct.

Neither are we persuaded by the suggestion in *Szakacs* that the word "another" bars the application of § 2K2.1(b)(5) based on a contemporaneous crime that, if prosecuted federally, would have been grouped with the firearms offense for which the defendant is being sentenced. *See Szakacs*, 212 F.3d at 351 n.2. *See generally* U.S.S.G. § 3D1.2 (explaining when convictions must be grouped). The *Szakacs* court reasoned that overlapping offenses "should not result in double counting for purposes of punishment." *Szakacs*, 212 F.3d at 351 n.2. With respect, we believe this reasoning misconstrues the guidelines process. It is true that grouping is designed to "prevent multiple pun-

ishment for substantially identical offense conduct." U.S.S.G. Ch. 3, Pt. D, intro. comment. This does not mean, however, that a defendant who commits two crimes during a single course of conduct may not have the sentence for one offense increased based on the other offense. On the contrary, Chapter 2 of the guidelines expressly provides for enhancements based on specific offense characteristics, including offenses linked to the offense of conviction. The grouping rules in Chapter 3 ensure that no *additional* penalty is imposed beyond those enhancements; they do not preclude the enhancements altogether. *See id.* (noting that some minor offenses may be "so closely related to [a] more serious offense that it would be appropriate to treat them as part of the more serious offense, leaving the sentence enhancement to result from application of a specific offense characteristic").

An additional reason offered to support a restrictive reading of the phrase "another felony offense" is that a broader interpretation would require enhancement for virtually all weapons offenses because "almost every federal weapons offense could be prosecuted simultaneously under state law." *Fenton*, 309 F.3d at 828. In our experience, however, it is common for § 922(g) convictions to arise from police searches that result in the discovery of a firearm in the possession of a convicted felon. While these searches are generally predicated on suspicion that the felon has committed some other offense, there is frequently no evidence linking that offense to possession of any weapon; thus, that offense could not be used to support a § 2K2.1(b)(5) enhancement. On other occasions, the search ensues from a traffic stop; in those cases, it may be clear that the defendant possessed a firearm while committing a traffic infraction, but most such infractions are not felonies and therefore would not justify a § 2K2.1(b)(5) enhancement. And, while possession of the firearm may itself be a state-law crime, this would not support a § 2K2.1(b)(5) enhancement either, because Application Note 18 defines "another felony offense" to exclude firearms possession crimes. Thus, even if contemporaneous crimes may be treated as "[ ]other felony offense[s]," a large subset of § 922(g) prosecutions would not implicate § 2K2.1(b)(5) at all.[4]

---

[4]In the remaining cases—that is, those in which the defendant's unlawful possession of a firearm is discovered because he has committed

Finally, we believe that adopting a restrictive definition of "another felony offense"—such as the definition announced in *Sanders*—entails significant disadvantages. First, such a definition may be more difficult to apply than the *Blockburger* test, which has been clarified by courts over several decades. *Cf. Cobb*, 532 U.S. at 173 (stating that *Blockburger* would be easier to apply than "vague iterations of the ' "closely related to" ' or ' "inextricably intertwined with" ' test" (quoting *id.* at 186 (Breyer, J., dissenting))). For example, suppose that Blount had not picked up a firearm inside the house he was burglarizing, but had instead discovered the firearm in the backyard and picked it up immediately before breaking into the house. It is not clear to us whether this slight difference in the sequence of events would alter Blount's exposure to a § 2K2.1(b)(5) enhancement under the *Sanders* test. This uncertainty about how to apply *Sanders* is troubling because it could lead to disparate sentences for similarly situated offenders.

We are also concerned that the *Sanders* test would produce results inconsistent with the purposes underlying § 2K2.1(b)(5). For example, suppose that Defendant X and Defendant Y both decide to burglarize pawnshops. Defendant X acquires a firearm before the break-in, and he keeps the weapon at ready during the burglary in case he encounters anybody inside the shop. By contrast, Defendant Y is unarmed when he breaks into the pawnshop, but he immediately finds a firearm and keeps it close at hand while looting the rest of the shop. Both defendants have prior felony convictions, and both are ultimately convicted of violating § 922(g). So far as we can tell, Defendant X would be eligible for a § 2K2.1(b)(5) enhancement under *Sanders*, but Defendant Y would not be. But Defendant Y, no less than Defendant X, deliberately armed himself and was prepared to use a firearm to effectuate another crime. Consequently, applying § 2K2.1(b)(5) to Defendant X but not Defendant Y would not serve the purposes of that enhancement.

---

another offense—a § 2K2.1(b)(5) enhancement properly reflects the defendant's additional culpability. *See, e.g.*, *United States v. Turnipseed*, 159 F.3d 383, 386 (9th Cir. 1998) (upholding the imposition of a § 2K2.1(b)(5) enhancement on a defendant who had used a firearm to commit an assault because the assault increased "the seriousness of the gun possession").

For these reasons, we conclude that the *Sanders* test does not implement the language and purposes of § 2K2.1(b)(5) as effectively as the *Blockburger* test. We therefore hold that a proffered enhancement offense qualifies as "*another* felony offense" if it is distinct from the offense of conviction under *Blockburger*. And, because it appears to be undisputed that Blount's state-law burglary and his § 922(g) offense are distinct under *Blockburger*, we hold that the burglary constituted "another felony offense."

## B. *"In Connection With"*

The dispute among courts of appeals relating to the imposition of § 2K2.1(b)(5) enhancements based on contemporaneous crimes is confined entirely to the phrase "another felony offense." This is because the conclusion that a contemporaneous crime cannot be "another felony offense"—the conclusion reached by the Third, Sixth, and Seventh Circuits—eliminates any need to examine other portions of § 2K2.1(b)(5). In our view, however, the "in connection with" requirement, rather than the "another felony offense" requirement, represents the primary limitation on the applicability of § 2K2.1(b)(5).

Among the decisions cited above, only *Armstead* analyzes the phrase "in connection with" as it relates to the application of § 2K2.1(b)(5) to contemporaneous crimes. In *Armstead*, the Fifth Circuit applied its precedent concerning the phrase "in connection with" and concluded that a § 2K2.1(b)(5) enhancement was appropriate because the firearms stolen by the defendant during a burglary "were possessed [during the burglary] and could have been used to facilitate" it. *Armstead*, 114 F.3d at 512.

The Fifth Circuit employs a definition of "in connection with" that is subtly different from the definition we have previously adopted. In the Fifth Circuit, the mere fact that a firearm was available to the defendant during the commission of another crime satisfies the "in connection with" requirement, even if the firearm was possessed under circumstances that would have hindered its use. *See United States v. Condren*, 18 F.3d 1190, 1199-1200, 1200 n.22 (5th Cir. 1994) (upholding § 2K2.1(b)(5) enhancement based on possession of weapon in same location as cache of drug paraphernalia, even though

drawer in which weapon was stored may have been locked). This court, however, requires a clearer nexus between the firearm and the associated offense. *See United States v. Nale*, 101 F.3d 1000, 1004 (4th Cir. 1996) (expressly rejecting the *Condren* approach); *cf. United States v. Young*, 115 F.3d 834, 838 (11th Cir. 1997) (analyzing differences between Fourth and Fifth Circuit interpretations of "in connection with"). Our circuit precedent treats "in connection with" as synonymous with "in relation to," as that term is used in 18 U.S.C.A. § 924(c) (West 2000). *See United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001). Under this interpretation, a weapon is used or possessed "in connection with" another offense if the weapon "facilitates or has a tendency to facilitate the [other] offense." *Id.* at 829. "[T]he firearm must have some purpose or effect with respect to the . . . crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993); *accord United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (stating that presence of firearm cannot be merely "spontaneous or coincidental").

The Government bears the burden of proving that the defendant possessed a firearm "in connection with another felony offense." *See Garnett*, 243 F.3d at 828 (noting that Government has burden of proving facts necessary to support § 2K2.1(b)(5) enhancement). In a case like the one before us, the Government can meet this burden by showing, for example, that the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand. Because no evidence of this nature is present here, the record fails to establish that Blount was eligible for a § 2K2.1(b)(5) enhancement.

III.

For these reasons, we hold that Blount committed "another felony offense" but that the record contains no evidence that he possessed a firearm "in connection with" that offense. It follows that the district court properly refused to apply a § 2K2.1(b)(5) enhancement. We therefore affirm the sentence imposed by the district court.

*AFFIRMED*