**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 07-4116**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WESLEY M. GROSE,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Southern
District of West Virginia, at Beckley.   Thomas E. Johnston,
District Judge.  (5:05-cr-00261)

———————

Submitted:  October 24, 2007       Decided:  November 15, 2007

———————

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne,
Appellate Counsel, David R. Bungard, Assistant Federal Public
Defender, Charleston, West Virginia, for Appellant.  Charles T.
Miller, United States Attorney, John L. File, Assistant United
States Attorney, Beckley, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Wesley N. Grose pled guilty to distributing a quantity of oxycodone on June 10, 2005, 21 U.S.C.A. § 841(a), (b)(1)(C) (West 1999 & Supp. 2007), and was sentenced to a term of seventy-eight months imprisonment. Grose appeals his sentence, contending that the district court clearly erred in giving him a two-level enhancement for possession of a deadly weapon during the offense, U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2006), in declining to give him an adjustment for acceptance of responsibility, USSG § 3E1.1, and in finding that he did not qualify for a reduction under the safety valve provisions of USSG §§ 2D1.1(b)(9), 5C1.2. Grose also argues that his sentence is unreasonable. We affirm.

Grose's conviction was based on his sale of oxycodone and alprazolam (Xanax) to James Lilly in a controlled buy at Grose's house in Cool Ridge, West Virginia, under the surveillance of drug task force agents. After two more controlled buys at Grose's house, a search warrant was executed there in August 2005. Agents seized oxycodone and Xanax and observed a large quantity of firearms in Grose's home, mostly rifles and shotguns, including several guns in a closet of the bedroom where Grose kept the drugs he sold.

Following the search, Grose demanded that Lilly, his son, and his daughter-in-law write a letter stating that a $100,000

- 2 -

check Grose received from James Lilly's wife, Barbara, was a gift. The next day he had them write a second version of the letter, which stated that the money was a loan. The Lillys informed law enforcement authorities about Grose's demand, and said they wrote what he asked because Grose had previously made threatening statements and they knew he owned firearms. Lilly told authorities that he and his wife bought oxycodone from Grose for several years and that his wife had died of an overdose of oxycodone in December 2004. When Grose was interviewed, he did not confirm this information.

At Grose's sentencing, the government stipulated that a base offense level of 24 applied based solely on the 12 grams of oxycodone he distributed in the first controlled buy. Grose did not dispute an adjustment for obstruction of justice based on his attempt to influence or intimidate Lilly into writing the letter about the $100,000 check, and the district court determined that the case presented no extraordinary circumstances that might justify an adjustment for acceptance of responsibility, which is ordinarily foreclosed by conduct that results in an adjustment for obstruction of justice. USSG § 3E1.1, comment. n.4. The district court decided that a firearm enhancement was proper because Grose had not shown that it was clearly improbable that his guns had any connection to his drug activity. The court noted that it was widely known that Grose possessed numerous firearms, that the

- 3 -

controlled drug buys took place at Grose's house, and that, while some of Grose's guns were antique or collectible weapons, others were simply hunting guns, and that Grose kept a number of the latter in the closet of the bedroom where he stored the drugs he sold.

The court also decided that Grose did not qualify for a two-level reduction under the safety valve provision because he had possessed firearms in connection with the offense and made credible threats of violence, and because the government informed the court that it did not believe Grose had been fully forthright about his drug dealing when he was interviewed. The court determined that Grose's total offense level was 28. He was in criminal history category I. His advisory guideline range was 78-97 months. The court imposed a sentence at the bottom of the range.

We first conclude that the weapon enhancement was properly applied. A two-level increase in the base offense level should be made if a dangerous weapon, such as a firearm, was present during the offense, "unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment. (n.3). The enhancement reflects "the increased danger of violence when drug traffickers possess weapons." Id. Application Note 3 to § 2D1.1 provides, as an example of a situation where it is clearly improbable that a defendant's gun is connected to his drug offense, that the enhancement "would not be applied if the

defendant, arrested at his residence, had an unloaded hunting rifle in the closet." The district court's findings of fact relating to sentencing enhancements are reviewed for clear error. <u>United States v. McAllister</u>, 272 F.3d 228, 234 (4th Cir. 2001).

In this case, Grose had working firearms in a closet three to five feet from the dresser where he kept the drugs that he sold. Grose did not dispute that he was known to possess firearms or that this fact was intimidating to the Lillys. We conclude that there was no evidence before the court sufficient for the district court to have found that it was clearly improbable that Grose's firearms were connected with his drug offense. Therefore, the district court did not clearly err in making the enhancement.

We are also satisfied that the district court did not clearly err in finding that Grose was not entitled to an adjustment for acceptance of responsibility. Application Note 4 to § 3E1.1 states that, generally, a finding that a defendant has engaged in conduct that warrants an adjustment for obstruction of justice "indicates that the defendant has not accepted responsibility for his criminal conduct." However, in extraordinary cases both adjustments may apply. <u>Id.</u> Grose contends that his is such an extraordinary case because (1) his obstructive conduct was limited to one incident, namely his attempt to create a letter stating that he received $100,000 from Lilly as a gift or a loan rather than as payment for drugs, and (2) he admitted his criminal conduct and

agreed to plead guilty after federal charges were filed. However, the district court determined that Grose had never given a credible explanation of his receipt of the $100,000, and that his obstruction of the investigation was still ongoing at the time of sentencing.

Grose next argues that his cooperation with the government entitles him to the safety valve reduction. A defendant who meets the five criteria set out in § 5C1.2 is entitled to a two-level reduction under § 2D1.1(b)(9). To qualify, the defendant must not have "use[d] violence or credible threats of violence or possess[ed] a firearm . . . in connection with the offense." USSG § 5C1.2(a)(2). In addition, no later than the sentencing hearing, the defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." USSG § 5C1.2(a)(5). The defendant bears "the burden of proving the existence of the five prerequisites" for the safety valve reduction. United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997).

Here, the district court based its decision that Grose was not eligible for the safety valve reduction primarily on his possession of firearms and the resulting firearm enhancement. The court did not specifically find that Grose possessed the firearms "in connection with the offense." See § 5C1.2(a)(2). As used

elsewhere in the guidelines, this phrase means that the firearm facilitated or had a tendency to facilitate the offense. United States v. Blount, 337 F.3d 404, 411 (4th Cir. 2003). However, the district court's finding concerning the firearm enhancement encompassed a finding that Grose possessed the firearm in connection with the drug offense. The court stated that "[t]he presence of the weapons . . . was known, and any time weapons are present, particularly in quantities and in proximity to criminal activity, including drug activity, there is an intimidation factor that is inherent in the situation and can be related to the drug activity." Thus, regardless of the nature of Grose's cooperation, he was not eligible for the safety valve reduction.[*]

Last, we conclude that the sentence was reasonable. After United States v. Booker, 543 U.S. 220 (2005), this Court will affirm a sentence if it "is within the statutorily prescribed range and is reasonable." United States v. Moreland, 437 F.3d 424, 433 (4th Cir.), cert. denied, 126 S. Ct. 2054 (2006) (internal quotation marks and citation omitted). "[A] sentence within the proper advisory Guidelines range is presumptively reasonable." United States v. Johnson, 445 F.3d 339, 341 (4th Cir. 2006); see

---

[*]Our review of the record discloses that the district court did not err in accepting the government's assessment that Grose had not been fully truthful in his debriefings, for reasons unrelated to Lilly's credibility, or in finding that the presentence report contained undisputed evidence that Grose made credible threats to Lilly. Either of these findings would also have been a basis for denying Grose the benefit of the safety valve provision.

Rita v. United States, 127 S. Ct. 2456, 2462-69 (2007) (upholding application of rebuttable presumption of reasonableness to within-guidelines sentence).

Grose was sentenced within the advisory guideline range after the court considered the § 3553(a) factors. He argues that his sentence is unreasonable because it is greater than necessary in light of certain § 3553(a) factors, specifically, his personal history and characteristics such as his lack of a prior criminal history, honorable military service, medical condition, and the effect on his wife and grown children. While the district court did not mention each of these factors, it "need not robotically tick through § 3553(a)'s every subsection[,]" but should "provide [this Court] an assurance that the sentencing court considered the § 3553(a) factors with regard to the particular defendant before [it] . . . ." United States v. Moulden, 478 F.3d 652, 657 (4th Cir. 2007). The court sentenced Grose at the bottom of the guideline range, noting his medical conditions and the financial difficulties his family faced. We conclude that Grose has not overcome the presumption of reasonableness by showing that his sentence is either procedurally or substantively unreasonable.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal

contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED