**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 07-4296**

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RODNEY COLBERT,

Defendant - Appellant.

—————————

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  N. Carlton Tilley, Jr., District Judge.  (1:06-cr-00337-NCT)

—————————

Submitted:  December 21, 2007       Decided:  January 9, 2008

—————————

Before WILKINSON and MICHAEL, Circuit Judges, and WILKINS, Senior Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

J. David James, SMITH JAMES ROWLETT & COHEN, L.L.P., Greensboro, North Carolina, for Appellant.  Anna Mills Wagoner, United States Attorney, Michael F. Joseph, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Rodney Colbert was convicted by a jury of possession of seventy-six counterfeit federal reserve notes in violation of 18 U.S.C.A. § 472 (West Supp. 2007), and was sentenced to a term of forty-six months imprisonment. Colbert appeals his conviction, contending that the district court erred in denying his motion for a directed verdict and in instructing the jury on aiding and abetting. He also contests his sentence, arguing that the court erred in finding that he possessed a dangerous weapon in connection with the offense, U.S. Sentencing Guidelines Manual § 2B5.1(b)(4) (2006), and in finding that he obstructed justice by giving perjured testimony at trial. USSG § 3C1.1. We affirm.

Colbert was stopped for speeding in Winston-Salem, North Carolina, on July 16, 2006. At trial, Officer Joshua Best testified that Colbert said he did not have his license with him. Best asked if the vehicle belonged to Colbert, at which point his passenger, Teon Steed, opened the glove compartment and Best saw a firearm inside. Best secured the gun, called for back-up, and searched both men. Steed had a small bag of cocaine.[1] Best then asked Colbert again if the car belonged to him. Colbert said it

---

[1]Colbert had a spring-loaded knife (a switchblade) in his pocket, an unlawful weapon in North Carolina, and Best found in the console of the car an expandable metal baton and a can of law enforcement strength pepper spray. The government chose not to introduce evidence of the knife, the baton, or the pepper spray at trial.

did and said the registration was in the owner's manual in the glove box. Best retrieved it and asked Colbert his name. Colbert said he was Robert Bailey, and that he lived at an address on Carol Road in Winston-Salem--a name and address which matched the information on the registration.

Because Steed had drugs in his possession, Best had his dog sniff the exterior of the car. When the dog alerted, Best searched the car. In the trunk, he found a bucket and towels used for car washing and, in the spare tire well, a wallet lying on two envelopes. The wallet contained photo identification for Rodney Colbert. The envelopes contained seventy-six counterfeit twenty-dollar bills. Colbert told Best he knew nothing about either the counterfeit money or the gun.

After his arrest, Colbert was interviewed by Secret Service Agent Donna James. James testified at trial that Colbert told her he knew nothing about the counterfeit money or the gun. He also said he did not know where his wallet was when he was stopped by Officer Best. He told James that the car belonged to Robert Bailey, that he was helping Bailey pay for the car because Bailey was in bankruptcy, and that in return he could use the car. He said Bailey had come to his house with the car that morning. He said he had taken Bailey home and was using the car that day.

At trial, Robert Bailey testified that he had sold the car to Colbert about two years earlier, when he filed for

bankruptcy, and that he had not used the car since then. He said he had not driven the car to Colbert's house on the day Colbert was arrested, nor had he left a gun or any counterfeit money in the car when he turned it over to Colbert.

Colbert testified that he had known Steed about two months, that Steed was frequently a passenger in his car, and that on July 16, he picked Steed up at a gas station where he also used the rest room and got gas, which he paid for in cash. Colbert said that, as soon as he drove away from the gas station, he was stopped by Officer Best. Colbert said he initially had his wallet in the console, where he usually kept it, but he was uneasy about Steed seeing the wallet there, so he moved it to the trunk, under the towels. He denied putting the wallet in the spare tire well. He also denied having a gun in the glove compartment or counterfeit money in the trunk of the car.

Colbert said he identified himself to Officer Best as Robert Bailey because his license had been suspended. He said he told Best that the car was not his and that he did not know where the registration was. Under cross-examination, Colbert repeatedly denied that he told Officer Best the registration was in the owner's manual in the glove compartment. He also denied telling Best or James that he had gotten the car from Bailey in the morning of the day he was arrested. He said he told James that had been their intention. But when the prosecutor asked whether Colbert

told Best and James that Bailey had been driving the car and Colbert only got it that morning, he stated, "No, sir, I did not." Colbert insisted that he had placed his wallet under the towels in the trunk, not in the spare tire well.

Without objection from either party, the district court instructed the jury on aiding and abetting with respect to Count One, the counterfeiting offense. The jury convicted Colbert of Count One, but acquitted him of Count Two, unlawful possession of a firearm by a convicted felon.

In the presentence report, the probation officer recommended a 4-level enhancement under USSG § 2B5.1(b)(4) for possession of a dangerous weapon in connection with the offense and a 2-level adjustment for obstruction of justice based on Colbert's perjured trial testimony. At the sentencing hearing, Colbert objected to the weapon enhancement on the following grounds: (1) the jury had acquitted him of possessing the gun in the glove compartment; (2) there was evidence that Steed possessed the gun on another occasion; (3) there was insufficient evidence to connect the gun in the glove compartment to the counterfeit money in the trunk of the car; and (4) guns were not a legally recognized tool of counterfeiting. The government presented evidence about the spring-loaded knife Colbert had in his pocket, and the extendable baton and pepper spray that were in the console.

The district court noted that the spring-loaded knife, the extendable baton, and the pepper spray were all dangerous weapons. The court further found that "there were just too many weapons" in the car for them not to be connected to the counterfeit money. The court found that a preponderance of the evidence supported a conclusion that Colbert possessed a dangerous weapon, "in particular the automatic knife, but also including the extendable baton and pepper spray in connection with the counterfeit [money]."

In addition, the district court found that Colbert had falsely testified that he told Agent James that he only received the car from Bailey on the morning of the stop. The court therefore determined that an adjustment for obstruction of justice was warranted. The court adopted the guideline calculations in the presentence report and imposed a sentence at the top of the advisory guideline range of 37-46 months.

On appeal, Colbert first argues that the district court erred in making the weapon enhancement because there was no evidence of a connection between the gun or any of the other weapons in the car and the counterfeit money.[2] This circuit interprets the term "in connection with" as being "synonymous with

_____

[2]Colbert also suggests that the Sentencing Commission may have unconstitutionally usurped legislative powers by including weapons other than firearms in § 2B5.1(b)(4). He cites no authority for this proposition and we, therefore, do not consider it.

'in relation to'" as that term is used in 18 U.S.C.A. § 924(c) (West Supp. 2007). United States v. Blount, 337 F.3d 404, 411 (4th Cir. 2003) (quoting United States v. Garnett, 243 F.3d 824, 828 (4th Cir. 2001)). To show that the firearm was possessed "in connection with" the offense, the government must demonstrate that the firearm either facilitated or had the potential to facilitate the felony offense, Garnett, 243 F.3d at 828-29, and that its presence was not accidental or coincidental. Blount, 337 F.3d at 411 (citing Smith v. United States, 508 U.S. 223, 238 (1993)). In an appropriate case, the government may prove this fact by showing that the gun "provid[ed] a means of protection or intimidation," Smith, 508 U.S. at 238, or that the defendant "prepared for this contingency by keeping the [weapon] close at hand." Blount, 337 F.3d at 411.

The court found that Colbert chose to have three weapons in his car close to the driver (apart from the firearm in the glove compartment), while he was in possession of counterfeit currency. We are satisfied that the district court did not clearly err in finding, impliedly, that Colbert possessed the weapons to protect himself and his counterfeit currency and that, therefore, the court did not err in making the enhancement.

Next, Colbert contests the adjustment for obstruction of justice. The adjustment applies when the district court determines that a defendant committed perjury. USSG § 3C1.1, comment. n.4(b);

see also <u>United States v. Dunnigan</u>, 507 U.S. 87, 94 (1993).  The adjustment for perjury is not applicable merely because the defendant testified and was subsequently convicted.  <u>Id.</u> at 95.  The court must find that the defendant gave false testimony under oath "concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  <u>Id.</u> at 94; <u>United States v. Smith</u>, 62 F.3d 641, 646-47 (4th Cir. 1995).  When the sentencing court finds that a defendant has committed perjury, it is preferable if the court addresses all the elements of perjury separately and clearly, but a finding that "encompasses all of the factual predicates for a finding of perjury" is sufficient.  <u>Dunnigan</u>, 507 U.S. at 95.

Here, the district court found that Colbert testified falsely about whether he had only received the car from Bailey on the morning of the day he was arrested.  At trial, Colbert testified that Bailey had not driven the car for about a year, thus tacitly acknowledging that he himself had access to the car for a long time before his arrest, though he continued to insist on the fact, technically true, that the car did not belong to him.  Colbert argues that his testimony about what he told James was not significantly different from James' testimony and may have been due to faulty memory.  He also argues that the statement was not material because it conflicted with his own testimony that he frequently gave Steed and others rides in the car.

The significance of Colbert's denial of his statement to James is that it was one of a series of conflicting statements Colbert made about his identity, and his ownership and use of the car. His statement to James that he had not had access to the car for more than a short time on the day of his arrest was an exculpatory statement at the time, but at trial, after Bailey's testimony, Colbert either had to explain why he lied to Agent James, or deny that he did. He chose the latter. The clear aim of Colbert's false trial testimony was to avoid conflict with Bailey's testimony and yet present himself to the jury as an innocent user of the car with no connection to the counterfeit money found in it.

Colbert also asserts that the court erred in finding false his testimony that he put his wallet under the towels because the wallet might have fallen into the tire well when the car was moving. However, Colbert's testimony was rendered less credible by his various conflicting statements. We conclude that the district court did not clearly err in finding that Colbert testified falsely at trial about material matters and that the purpose of the false testimony was to influence the outcome of the trial. Therefore, the adjustment for obstruction of justice was warranted.

Colbert asserts that the evidence was insufficient to convict him of possession of counterfeit bills because there was no evidence he knew the bills were counterfeit. We review the district court's decision to deny a Rule 29 motion de novo. <u>United</u>

States v. Smith, 451 F.3d 209, 216 (4th Cir.), cert. denied, 127 S. Ct. 197 (2006). Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); Smith, 451 F.3d at 216. This court "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." United States v. Moye, 454 F.3d 390, 394 (4th Cir.) (internal quotation marks and citation omitted), cert. denied, 127 S. Ct. 452 (2006).

The elements of a violation of § 472 are that the defendant possessed counterfeit federal reserve notes; that he knew the notes were counterfeit; and that he possessed the notes willfully and with the intent to defraud. The evidence here showed that the counterfeit money and Colbert's wallet were both hidden in the spare tire well in the trunk of the car and that a gun and three other weapons were also in the car. The fact that Colbert hid the counterfeit money in the trunk apart from his wallet indicated that Colbert knew it was not ordinary money. Moreover, Colbert's inability to explain credibly how his wallet came to be on top of the envelopes containing the counterfeit money was significant. "Relating implausible, conflicting tales to the jury can be rationally viewed as further circumstantial evidence indicating guilt." United States v. Burgos, 94 F.3d 849, 867 (4th

Cir. 1996) (en banc). In addition, the large number of weapons in the car showed more than ordinary caution, suggesting that Colbert believed himself to be at unusual risk. Although the evidence is circumstantial, we conclude that it was sufficient for the jury to infer that Colbert knew the money was counterfeit and that he willfully possessed it with intent to defraud.

Last, Colbert asserts that the district court erred as a matter of law in giving an instruction on aiding and abetting when the government did not request it or seek to prove aiding and abetting, and there was no evidence supporting a claim of aiding and abetting. See United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994) (aiding and abetting instruction is proper where government proceeds on that theory and evidence warrants it). Because Colbert did not object to the instruction in the district court, the court's decision to give the instruction is reviewed for plain error. United States v. Olano, 507 U.S. 725, 732 (1993).

A defendant may be convicted as an aider and abettor even if charged as a principal because aiding and abetting is not a separate crime. United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003) (citing United States v. Scroger, 98 F.3d 1256, 1262 (10th Cir. 1996)). Therefore, "so long as all the elements necessary to find [the defendant] guilty of the crime, whether as a principal or as aider and abettor, were put before the jury, conviction will be proper." Rashwan, 328 F.3d at 165 (quoting

<u>United States v. Perry</u>, 643 F.2d 38, 45 (2d Cir. 1981)). Although the government did not seek to prove that Colbert was aided by others, the evidence warranted the instruction because the fingerprints of other, unidentified persons were on the bills. We are satisfied that the district court did not plainly err in giving the instruction.

We therefore affirm the conviction and the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>