**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4725**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON DIX,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  J. Michelle Childs, District Judge.  (3:18-cr-00958-JMC-1)

Argued:  December 9, 2022                              Decided:  February 14, 2023

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wilkinson joined.  Judge King wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:**  Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Lamar J. Fyall, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** M. Rhett DeHart, Acting United States Attorney, Charleston, South Carolina, Casey Rankin Smith, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

NIEMEYER, Circuit Judge,

When a deputy sheriff in Lexington County, South Carolina, began to follow a vehicle because he thought the driver was behaving suspiciously, the vehicle sped away, failing to stop when the deputy activated his patrol car's blue light and siren and leading the deputy on a high-speed chase. After the vehicle crashed, the driver, identified as Jason Dix, was arrested and a firearm and ammunition were recovered from the front floorboard of the driver's side of the vehicle.

Dix pleaded guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and the district court sentenced him to 99 months' imprisonment. The 99-month sentence included an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for the use or possession of the firearm "in connection with another felony offense," namely failure to stop for a blue light, in violation of S.C. Code Ann. § 56-5-750.

At sentencing, Dix objected to the enhancement on both procedural and substantive grounds. For his procedural argument, he contended that he was not given the required notice of the enhancement because the presentence report identified "another felony offense" as the basis for the enhancement, *i.e.*, grand larceny of the vehicle he was driving. Only at sentencing, when Dix advanced evidence that placed the larceny offense in doubt, did the government suggest that the court instead use the blue-light offense for the enhancement. The district court accepted the suggestion and applied the enhancement based on Dix's possession of a firearm in connection with the blue-light offense.

For his substantive argument, Dix contended that the firearm found in the vehicle he was driving was not "used" or "possessed" "in connection with" the blue-light offense

2

because the firearm had not "facilitated" the offense, as required by Sentencing Guidelines commentary. The government argued that the firearm "emboldened" Dix in his flight from the deputy sheriff, and the district court agreed and applied the enhancement.

While we agree that Dix was not given the notice required by Federal Rule of Criminal Procedure 32(d), (f) and U.S.S.G. § 6A1.2, we conclude that the error was harmless in the circumstances of this case. We also conclude that the district court did not clearly err in applying the enhancement by finding that the firearm was possessed "in connection with" the blue-light offense. Accordingly, we affirm.

I

On June 8, 2018, Dix was at a gas station in Lexington County when Deputy Sheriff Michael Smith observed him and thought that he was behaving suspiciously. Because Deputy Smith could not see the license plate on Dix's vehicle, he chose to follow the vehicle as it left the gas station. Dix sped away from Deputy Smith, and when Smith activated the blue light and siren on his patrol car, Dix failed to stop. Following a short, high-speed chase, during which Dix's vehicle reached the speed of 104 miles per hour and ran through two red lights, Dix ended up crashing into another vehicle. When Deputy Smith approached Dix's crashed vehicle and ordered Dix to exit, Dix resisted, and Smith took him to the ground and handcuffed him. Dix's vehicle was then searched, and other deputies recovered a 9-millimeter pistol on the front floorboard of the driver's side of the vehicle, along with two magazines loaded with ammunition.

3

The vehicle that Dix was driving belonged to Andrea Hair who, when contacted, told deputies that Dix did not have permission to drive the vehicle. She requested that charges be pressed against him for the theft of the vehicle. Dix maintained, however, that he had borrowed Hair's vehicle with her permission.

Dix was charged in state court with (1) grand larceny involving a value of $10,000 or more; (2) unlawful carrying of a pistol; (3) resisting arrest; (4) failure to stop for a blue light; (5) reckless driving; and (6) driving under suspension. And later, Dix was charged in federal court with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). While the four most serious state charges remained pending, Dix pleaded guilty to the § 922(g)(1) federal offense.

The presentence report prepared by the Probation Office for Dix's sentencing determined that his base offense level was 24, based on his two prior convictions for controlled substance offenses. The report added four levels to the base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) on the ground that Dix "used and possessed a firearm and ammunition in connection with another felony offense." While the presentence report described all six state offenses for which Dix had been charged (including the grand larceny and blue-light offenses), it recommended basing the U.S.S.G. § 2K2.1(b)(6)(B) enhancement on Dix's grand larceny of Hair's vehicle. The report also added two levels under U.S.S.G. § 3C1.2 for Dix's reckless endangerment while fleeing from a law enforcement officer. Finally, it deducted three levels for Dix's acceptance of responsibility, resulting in a total offense level of 27. When that offense level was combined with Dix's criminal history of Category IV, the sentencing range recommended

4

by the Sentencing Guidelines was 100 to 125 months' imprisonment, which was capped at 120 months' imprisonment because of the 10-year statutory maximum. *See* 18 U.S.C. § 924(a)(2).

Before the sentencing hearing, Dix objected to the four-level enhancement imposed under § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with another felony offense, arguing that he did not commit the identified offense of grand larceny because, as he claimed, he borrowed the vehicle with the owner's permission.

Again at the sentencing hearing, Dix repeated his objection to the four-level enhancement, giving the same reason. He reiterated that he had Hair's permission to borrow the car and suggested that Hair had claimed that the vehicle was stolen in order to limit her liability with the insurance company. He also noted that Hair did not report the vehicle as stolen until the deputies contacted her. While the government pushed back on Dix's arguments, it also offered an "alternate theory" for application of the four-level enhancement, suggesting, for the first time, that the court could use the blue-light offense to support the enhancement. The government argued that Dix's possession of the firearm "embolden[ed] him to run from the police" and that because Dix knew he was not supposed to possess a firearm — both because he was a felon and because he was on probation for a prior state offense — the firearm contributed to his fleeing.

In response to the government's new alternate theory, Dix's counsel stated to the court, "That's the first I have heard of that theory. It's not been entered in the presentence report or any other thing that's been filed in this case." Dix's counsel then stated that he still stood on his objection to the four-level enhancement, arguing, "I don't see how the

5

fact that a firearm was possessed in the vehicle, that certainly didn't facilitate the failure to stop for police." The parties' arguments regarding the new theory span the next 20 pages of the sentencing hearing transcript. Dix's counsel maintained that while possession of the firearm might have been a *motive* for Dix to flee, it did not "*facilitate*" the blue-light offense, as required by the enhancement. He argued repeatedly that "motivate and facilitate are two completely different concepts." The parties also discussed whether Dix's blue-light offense was a felony in light of the fact that, as a first-time offense, it was labeled as a misdemeanor under state law. *See* S.C. Code Ann. § 56-5-750(B)(1). All agreed, however, that the federal definition of a felony would control and that the blue-light offense thus qualified as a felony because the maximum penalty for the violation was three years' imprisonment. *See id.*; *see also* U.S.S.G. § 2K2.1 cmt. n.14(C) (defining "[a]nother felony offense" as an offense "punishable by imprisonment for a term exceeding one year").

At the end of the hearing, the district court said that whether Dix stole the vehicle or used it with permission "could kind of go either way" given that the court was unable "to assess [Hair and Dix's] credibility." It then announced that it "agree[d] with [the government's] alternative argument" for applying the enhancement, based on the blue-light offense. The court explained that the offense was committed while Dix knew that he had a gun, "knowing he's on probation, and I do believe that then that can facilitate why he is then committing a felony." In short, the district court declined to find that the four-level enhancement was warranted by a grand larceny offense, finding instead that the enhancement was warranted under the government's new theory. It thus overruled Dix's objection to the enhancement.

6

After applying the four-level enhancement, the court adopted the presentence report's calculation that the Guidelines' sentencing range was 100 to 120 months' imprisonment and then downwardly departed, imposing a sentence of 99 months' imprisonment.

From the district court's judgment, Dix filed this appeal, challenging only the four-level enhancement. He does so on both procedural and substantive grounds.

II

Dix contends that the district court erroneously enhanced the Sentencing Guidelines' recommendation for his sentence by adding four levels under U.S.S.G. § 2K2.1(b)(6)(B), which provides for the enhancement of a sentence for a firearm conviction when the firearm was "used or possessed . . . in connection with another felony offense." He argues (1) that he was not given proper notice of the application of the enhancement based on the blue-light offense and (2) that the evidence failed to show that his possession of the firearm "facilitated" his failure to stop for a blue light. He notes that without the enhancement, his Guidelines sentencing range of 100 to 120 months' imprisonment would instead have been 70 to 87 months' imprisonment. Accordingly, he requests that his 99-month sentence be vacated and that his case be remanded for resentencing.

A

Dix was first given notice at the sentencing hearing that the four-level enhancement under § 2K2.1(b)(6)(B) might be applied based on his commission of the blue-light

7

offense. While his presentence report recommended application of the four-level enhancement, it did so based on the alleged grand larceny offense, not the blue-light offense. Only when the grand larceny offense was called into doubt at the sentencing hearing did the government suggest that the court use the blue-light offense instead. When the government presented this alternative basis for the enhancement, Dix's counsel objected, noting that "[i]t's not been entered in the presentence report or any other thing that's been filed in this case." He did not, however, request a postponement of the sentencing hearing or a revision of the presentence report. Rather, he argued at some length that the blue-light offense did not support the enhancement. Dix now requests that we vacate the sentence and remand for resentencing, arguing that the procedure that was followed violated Federal Rule of Criminal Procedure 32(d), U.S.S.G. § 6A1.2, and *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018).

The Federal Rules of Criminal Procedure require the preparation of a presentence report, which, among other things, must identify all applicable Guidelines, calculate the offense level and state the advisory sentencing range, and identify any factor relevant to the appropriate sentence within the applicable Guidelines range. *See* Fed. R. Crim. P. 32(d)(1). Moreover, the defendant must be given the presentence report "at least 35 days before sentencing," *id*. 32(e)(2), to allow for a dialogue with respect to any objections made and for any adjustments to the presentence report, "as appropriate," *id*. 32(f). The Sentencing Guidelines provide similarly. *See* U.S.S.G. § 6A1.2. Moreover, § 6A1.3 provides that "the parties shall be given an adequate opportunity to present information to the court regarding" any disputed factor "important to the sentencing determination."

8

U.S.S.G. § 6A1.3(a); *see also Hodge*, 902 F.3d at 427 (noting that defendants have "a right to adequate notice" of an enhancement "to give the defendant an opportunity to contest" the enhancement and that such notice is "typically done . . . in the defendant's [presentence report]" (cleaned up)).

These provisions were not complied with in connection with the § 2K2.1(b)(6)(B) enhancement applied in this case for Dix's possession of a firearm *in connection with the blue-light offense*. Again, the presentence report relied on grand larceny, rather than the blue-light offense, to justify the enhancement. Moreover, the government did not object to the presentence report, as required by Rule 32(f), on the ground that it should also identify the blue-light offense as a basis for the enhancement. Therefore, when the government suggested at sentencing that the court could rely on the blue-light offense, Dix had not been given the notice required by Rule 32(d) and U.S.S.G. § 6A1.2. This, we conclude, was procedural error.

Dix contends that this "error [was] serious because it affect[ed] [his] liberty interest," and he therefore requests that we vacate his sentence and remand for resentencing. He has not, however, shown that the lack of notice prejudiced him in any way. He did not at sentencing request a postponement or request that he be given a corrected presentence report. And he has not, in his briefs on appeal or at oral argument, identified any additional act that he would have taken or procedure that he would have followed had he been notified in advance of the sentencing hearing that the blue-light offense might be used to support the enhancement. He does argue on appeal that his firearm possession was not "in connection with" the blue-light offense. But his argument

9

in this regard is the same as the argument that he made at some length to the district court. Thus, this is not a case where the defendant was sentenced without the opportunity to object and make arguments regarding the applicability of an enhancement. *See Hodge*, 902 F.3d at 427 (articulating the right to adequate notice to give the defendant an opportunity to contest an enhancement).

In arguing that the procedural error that occurred here warrants a new sentencing, Dix relies on *Hodge*, a case in which we did order resentencing. But in *Hodge*, the defendant was indeed prejudiced by the failure to receive notice of a sentencing enhancement. The defendant's sentence in *Hodge* was enhanced under the Armed Career Criminal Act ("ACCA"), based on three prior convictions that were identified in the presentence report. *After the defendant was sentenced* based on those three convictions, the Supreme Court issued an opinion that indicated that one of the prior convictions no longer qualified as an ACCA-enhancing conviction. The defendant then raised that point on collateral review with a motion under 28 U.S.C. § 2255, and the government responded by seeking, *for the first time on collateral review*, to substitute another qualifying offense. We rejected the government's effort because the new offense had not been designated as an ACCA-enhancing conviction before sentencing and thus the defendant had not been given notice of it as required by Rule 32(d). Because the new predicate offense was identified for the first time on collateral review, we reasoned that requiring a defendant to respond to a new basis for application of an enhancement in that context would "unfairly deprive [the defendant] of an adequate opportunity to respond" because "[w]hereas at sentencing the Government has the burden of proving by a preponderance of the evidence"

10

that the enhancement applies, "on collateral review the defendant has the burden of proving" that it does not. *Id*. at 429–30 (cleaned up). We therefore held "that the Government must identify all convictions it wishes to use to support a defendant's ACCA sentence enhancement *at the time of sentencing*," *Hodge*, 902 F.3d at 430 (emphasis added), not "for the first time on collateral review," *id*. at 429.

Here, while Dix should have received notice earlier, he did receive notice *before sentencing*. And as a result, he had the "opportunity to contest the validity [and] applicability" of the enhancement based on the blue-light offense before it was used in calculating his advisory sentencing range. *Hodge*, 902 F.3d at 427 (cleaned up). Moreover, he has not identified any prejudice resulting from the untimeliness of the notice. He made every argument in the district court before sentencing that he now makes on appeal to oppose basing the enhancement on the blue-light offense, and he has identified no other argument or process that was foreclosed and that could have helped his position.

We have noted that "procedural errors at sentencing . . . are routinely subject to harmlessness review." *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) (quoting *Puckett v. United States*, 556 U.S. 129, 141 (2009)); *see also United States v. Davenport*, 445 F.3d 366, 371 (4th Cir. 2006) (noting that the failure to provide notice as required by Rule 32(h) would be reviewed for harmlessness), *abrogated in part on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008); *United States v. Lockhart*, 58 F.3d 86, 89 (4th Cir. 1995) (declining to remand, despite a Rule 32 violation, where the defendant "failed to show that the error would have affected his sentence").

11

Our good colleague in partial dissent asserts that because of the erroneous delay, "Dix [was] actually prejudiced because he is now serving a 99-month sentence," which is 12 months longer than a sentence that could be imposed "absent the four-level enhancement." That position, however, implies that had there been no delay, Dix would not have received the 99-month sentence. That conclusion, however, does not logically follow because the 99-month sentence was grounded on the merits of the four-level enhancement, not on the delay. In the circumstances of this case, *the delay*, as we explain, did not cause Dix any prejudice, and he has claimed none. We therefore conclude that while the delayed notice was error, it was harmless error and therefore "must be disregarded." Fed. R. Crim. P. 52(a). Accordingly, we reject Dix's request that we order resentencing based on the procedural error.

B

For his substantive argument challenging the district court's application of § 2K2.1(b)(6)(B), Dix contends that his firearm possession was not sufficiently linked to the blue-light offense to satisfy the requirements of the enhancement. The Sentencing Guidelines provide a four-level enhancement for a firearm possession violation when the firearm was "used or possessed . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). And the Application Notes to that section explain that a firearm is used or possessed "in connection with" another felony offense when the firearm "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A); *see also United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003).

12

We have explained that the § 2K2.1(b)(6)(B) enhancement is designed to ensure that a defendant receives more severe punishment for a firearm offense when he "commits a separate felony offense *that is rendered more dangerous* by the presence of [the] firearm." *Blount*, 337 F.3d at 406 (emphasis added) (discussing the prior iteration of the enhancement, then numbered as § 2K2.1(b)(5)). And we have concluded that the enhancement is satisfied when the firearm has "'some purpose or effect with respect to the other offense,' including cases *where a firearm is 'present for protection or to embolden the actor.'" United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020) (emphasis added) (quoting *United States v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009)). But we have also noted that the firearm "does not have the requisite purpose or effect when it is 'present due to mere accident or coincidence.'" *Id.* (quoting *Jenkins*, 556 F.3d at 163).

The standard for applying § 2K2.1(b)(6)(B) "is not especially burdensome." *Bolden*, 964 F.3d at 287. Moreover, a district court's determination that the enhancement has been satisfied is a factual finding that is reviewed for clear error. *See Jenkins*, 566 F.3d at 163. Under that standard of review, "we will not disturb the district court's finding unless we are 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007)).

Dix argues that the firearm he possessed was not used either during the high-speed chase or when he exited the vehicle and resisted arrest. Rather, he argues, his possession of the firearm "was merely accident or coincidence" in relation to his failure to stop for the blue light. While he implicitly acknowledges that his flight could have been "motivated" by his knowledge that his possession of a firearm was illegal, he emphasizes that the

13

enhancement requires "facilitation," not "motivation."  He does not, however, dispute that the firearm was within arm's reach while he was fleeing from law enforcement.

The district court agreed with the government's argument at sentencing that the possession of the firearm emboldened Dix to flee, recognizing that firearm possession can embolden a defendant even when the defendant does not attempt to use the firearm.  *See, e.g.*, *Jenkins*, 566 F.3d at 163–64 (relying in part on the fact that the firearm "was accessible and ready for use" in concluding that it could have emboldened the defendant in connection with a simple drug possession offense).  We cannot conclude, in the circumstances of this case, that the court clearly erred in finding that Dix possessed the firearm in connection with the failure to stop for the blue light.  As in *Jenkins*, the court perceived that the firearm, which was lying at Dix's feet within easy reach, could embolden Dix.  Moreover, his blue-light offense was certainly rendered more dangerous by the nearby presence of the firearm.  *See Blount*, 337 F.3d at 406.  Accordingly, we affirm the district court's application of the four-level enhancement.

### III

In sum, we conclude that the district court erred in relying on the blue-light offense to apply a § 2K2.1(b)(6)(B) enhancement when Dix received notice of that basis for the first time at the sentencing hearing.  But we also conclude that the error was, in the circumstances of this case, harmless.  Finally, we conclude that the district court did not clearly err in applying the enhancement when the firearm was lying at Dix's feet while he failed to stop for a blue light.  Accordingly, the judgment of the district court is

14

AFFIRMED.

KING, Circuit Judge, concurring in part and dissenting in part:

Although I agree with my friends in the majority that a procedural error occurred in Jason Dix's sentencing proceedings, I disagree with their ruling that the error is harmless. In my view, the procedural error is the fault of the prosecutors and has prejudiced Dix. I would therefore vacate Dix's sentence and remand for resentencing.

I.

There is a striking procedural similarity between the sentencing and appellate proceedings in this case. In each situation, the issue resolved was neither properly raised nor briefed in a timely manner. In the district court, Dix's sentence was enhanced on a new and alternative theory — supported by the so-called "blue-light offense" — which was not identified in the PSR, was not noticed to Dix by the government, and was never mentioned in any submission prior to sentencing (hereinafter the "blue-light theory"). And in the appellate proceedings, the majority has resolved Dix's appeal on another new and alternative theory — that is, harmless error — which was neither timely raised nor argued by its beneficiary, the government. Indeed, harmless error was first raised by our Court's questioning during oral argument of Dix's appeal in Richmond.

As the majority explains, Dix pleaded guilty in January 2019 to the offense of possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g)(1). The PSR recommended a four-level enhancement, pursuant to the Sentencing Guidelines, on the ground that the firearm was "used and possessed . . . in connection with another felony offense." *See* USSG § 2K2.1(b)(6)(B). Importantly, the PSR specified only two

16

possible predicate offenses — "Possession of a Stolen Vehicle or Grand Larceny" — that could support the enhancement. *See* J.A. 160.[1] Although Dix timely objected to the proposed use of those predicates, the government made no objection at all to the PSR. *See* Fed. R. Crim. P. 32(f) (providing, in relevant part, that "[w]ithin 14 days after receiving the [PSR], the parties must state in writing any objections, including objections to material information . . . [and] sentencing guideline ranges").

During Dix's sentencing proceedings in September 2019, the district court promptly expressed doubt from the bench about whether either of the predicate offenses identified in the PSR would support the four-level enhancement. When it became apparent that the enhancement was in serious jeopardy, the prosecutor asserted orally that a different predicate offense — neither noticed nor mentioned in the PSR — might support the PSR's enhancement recommendation. The government then argued that, during his federal firearm offense, Dix had also committed the state law offense of failure to stop for a police car's blue light, in violation of S.C. Code Ann. § 56-5-750.[2] In response to the prosecutor's assertion, Dix's lawyer advised the court that he had never "heard of" the blue-light theory. *See* J.A. 62. Dix's lawyer also advised the court that the tardy blue-light theory had not "been entered in the [PSR] or any other thing that's been filed in this case." *Id.*

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2] At the time the PSR was prepared, Dix had been charged with — but not convicted of — the blue-light offense. *See* J.A. 145 (PSR notation that blue-light offense was pending in South Carolina state court).

17

Nevertheless, the district court adopted the government's blue-light theory and applied the four-level enhancement. Absent that enhancement, Dix's final Guidelines range would have been 70 to 87 months in prison. As a result of the four-level enhancement, however, Dix's Guidelines range was 100 to 120 months. The court imposed on Dix a below-Guidelines sentence of 99 months in prison.

In this appeal, the majority has concluded that a procedural error for lack of timely notice occurred when the district court relied on the blue-light theory to apply the four-level enhancement. As the majority explains, the Federal Rules of Criminal Procedure and the Guidelines "were not complied with in connection with the [Guidelines section] 2K2.1(b)(6)(B) enhancement applied in this case for Dix's possession of a firearm *in connection with the blue-light offense*." *See ante* at 9. That is, "when the government suggested at sentencing that the court could rely on the blue-light offense [theory], Dix had not been given the notice required by Rule 32(d) and [Guidelines section] 6A1.2." *Id.* Despite acknowledging the sentencing error, the majority rules that the error is harmless. The government did not, however, raise or argue harmless error on appeal. Again, the harmless error issue was first raised by this Court — *sua sponte* — during oral argument.

## II.

I readily concur in the majority's well-reasoned assessment that a procedural error occurred in Dix's sentencing proceedings. Nevertheless, as explained herein, I disagree that the error suffered by Dix was harmless beyond a reasonable doubt.

18

A.

Although the majority has recognized that harmless error review is applicable, *see* Fed. R. Crim. P. 52(a), it does not acknowledge that the burden rested on the government to show that the sentencing error suffered by Dix is harmless "beyond a reasonable doubt," *see United States v. Stokes*, 261 F.3d 496, 499 (4th Cir. 2001). More specifically, "the government must show that [the] error did not affect [Dix's] substantial rights." *See United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012) (internal quotation marks omitted). Inexplicably, the majority flips that burden on its head and rules today that it is Dix who must show prejudice. Not only is the majority's approach incompatible with our precedent, it is troubling in these circumstances, given the government's failure to raise or address harmless error in any of its submissions. *See generally United States v. Hall*, 858 F.3d 254, 280 n.8 (4th Cir. 2017) (observing that government may waive harmless error contention "by failing to argue harmlessness in its brief" (citing Fed. R. App. P. 28(b))).

B.

Additionally, the majority has failed to properly assess the question of harmless error and explain how the government can be entitled to prevail by showing that the sentencing error is harmless beyond a reasonable doubt. My view that the government has failed to carry that burden has three solid bases. First, the majority fails to acknowledge that the government invited the sentencing error and then compounded that invited error. Second, the majority downplays the importance of our Court's precedent that any predicate offense used to support a sentence enhancement must be timely noticed in the PSR. Finally, the majority ignores the fact that Dix has been prejudiced because he is now

19

serving a prison sentence of 99 months. That is, Dix is likely serving a sentence that is at least 12 months longer than he would be serving absent the four-level enhancement.

I will expound briefly on those points.

1.

First, the majority fails to acknowledge that, by not objecting to the PSR in a timely manner, the government invited the sentencing error. And it compounded that error by failing to take remedial steps during the sentencing proceedings to mitigate the prejudice suffered by Dix. For example, the majority highlights the fact that, after Dix first learned at the sentencing hearing that the prosecution would interpose its blue-light theory to support the four-level enhancement, Dix's lawyer failed to move for a postponement of sentencing. Relatedly, the majority chastises Dix's lawyer for failing to request a revised PSR. Those assertions, however, ignore the fact that it was the government — which bore the burden — that was obliged to seek a postponement of sentencing or a revised PSR.

In other words, the obligations that were legally on the government have been turned upside down in this appeal and applied against Dix. In that regard, it is worth emphasizing the noble principle that the prosecution's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *See Berger v. United States*, 295 U.S. 78, 88 (1935). Here, the government — in pursuing its blue-light theory — failed to focus on its solemn obligation of ensuring that a criminal defendant receives a fair sentencing. The prosecutors focused solely on ensuring that Dix received the four-level enhancement. Indeed, if the government had pursued either a postponement of Dix's sentencing or a revised PSR, there would be no error at all for the majority to *sua sponte* deem harmless.

20

2.

Second, the majority downplays the fundamental due process principles enunciated by our Court in *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018), and *United States v. Benton*, 24 F.4th 309 (4th Cir. 2022). *Hodge* and *Benton* stand for the proposition that a criminal defendant must be given adequate notice — in the PSR — of any predicate offense that could support a sentence enhancement. Yet the majority invokes harmless error and concludes that, because Dix's lawyer had a brief opportunity during the sentencing hearing (without any preparation) to contest the blue-light theory, the mandate for adequate notice to Dix of that theory is essentially irrelevant. A faithful reading of *Hodge* and *Benton* reveals the flaw of that prejudice analysis: the purpose of providing a defendant with adequate notice prior to sentencing is to afford him an opportunity to meaningfully contest the noticed issues, both before and during sentencing. *See United States v. O'Neal*, 180 F.3d 115, 125-26 (4th Cir. 1999) (recognizing that a criminal defendant has "a right to adequate notice of the government's plan to seek [an] enhancement . . . and of the convictions" in support thereof).

Moreover, in giving the government a "free pass" on ensuring that Dix had adequate notice, the majority's decision will be seriously problematic for the judiciary and for criminal defense lawyers moving forward. Despite *Hodge* and *Benton*, prosecutors can now simply raise new theories outside the PSR during the sentencing hearing and suffer no adverse consequences. That fact undermines what the experts and Congress had in mind in adopting the Rules of Criminal Procedure: protecting a criminal defendant's due process rights during the sentencing process. *See United States v. Curran*, 926 F.2d 59, 61 (1st Cir.

21

1991) (recognizing that Rule 32 "embodies the congressional intent to assure a defendant's due process rights in the sentencing process"); *United States v. Nappi*, 243 F.3d 758, 763 (11th Cir. 2001) (same).

3.

Third, the majority ignores the fact that Dix is actually prejudiced because he is now serving a 99-month sentence — that is, a sentence of at least 12 months more than he would likely be serving absent the four-level enhancement.[3]  In these circumstances, the four-level enhancement based on the blue-light theory resulted wholly from the successful — but erroneous — last-ditch effort of the government at sentencing.  *See* J.A. 63-64 (the prosecutor's acknowledgment during the sentencing hearing that "we don't have any evidence of [the predicates specified in the PSR] which is why we are going under the alternate theory of failure to stop for a blue light"); *id.* at 81 (the district court's acknowledgment that there was a lack of evidence as to the specified predicates and the court's agreement with the prosecutor's "alternative argument" based on the blue-light theory).  Put most simply, the sentencing error recognized by the majority was an invited error attributable solely to the government.  And the result of that invited error — that Dix is now serving additional time in prison — clearly impacts his substantial rights.

---

[3] My determination that Dix is probably serving at least 12 additional months in federal prison is predicated on the fact that the district court accorded Dix a downward departure and imposed a sentence of 99 months — 12 months greater than the high end of his otherwise proper Guidelines range (70 to 87 months).  With a proper Guidelines range of 70 to 87 months, a similar departure would result in a sentence of 69 months.  In that event, Dix's sentence would be 30 months less than the sentence he is serving.

Surprisingly, the majority proclaims that "the 99-month sentence was grounded on the merits of the four-level enhancement, not on the delay." *See ante* at 12. The majority then confoundingly reasons that "*the delay* . . . did not cause Dix any prejudice, and he has claimed none." *Id.* As heretofore explained, Dix's sentence was the direct consequence of the invited error that the majority readily identifies. Had the blue-light theory not been orally asserted — in a tardy fashion — by the prosecution at Dix's sentencing, there would have been no basis for the four-level enhancement. Accordingly, Dix is actually prejudiced because his 99-month sentence is otherwise "longer than that to which [he] would . . . be subject." *See Stokes*, 261 F.3d at 499; *see also Hargrove*, 701 F.3d at 161 (recognizing that "[a] sentencing error is harmless if the resulting sentence was not longer than that to which the defendant would otherwise be subject" (internal quotation marks omitted)).

## III.

Because Dix has been prejudiced by the government's failure to provide adequate notice of its intention to enhance his sentence on the basis of the blue-light theory, I would vacate his sentence and remand for resentencing.

With great respect, I dissent in part.

23